RINES (SMITH v.). See Case No. 13,100.

RING (CAHOON v.). See Case No. 2,292.

RING v. The R. E. LEE. See Cases Nos. 11,690 and 11,691.

RING, The C. W. See Case No. 3,525.

## Case No. 11,841.

### Ex parte RINGGOLD.

[3 Cranch, C. C. 86.][1]

Circuit Court, District of Columbia. April Term, 1827.

MARSHAL—DISTRICT OF COLUMBIA—POWERS — ORPHANS' COURT—BY WHAT LAWS GOVERNED.

1. The orphans' court for the county of Alexandria has no authority to order the marshal of the District of Columbia to administer the estate of any deceased person; nor is the marshal bound to obey any such order.

2. He is not a county or corporation officer.

3. He has the powers of a sheriff in executing the laws of the United States, but is not bound to perform all the duties of a sheriff under the state laws.

4. The powers and duties of the judge of the orphans' court for Alexandria county are limited by the laws of Maryland, as they existed on the 27th of February, 1801, not by the laws of Virginia.

This was an appeal from the orphans' court for the county of Alexandria [in the matter of Tench Ringgold, marshal of the District of Columbia]. The following is the whole of the record which came up from that court:—

"Orphans' Court, Alexandria, June Term. 1825. Ordered that the marshal of the District of Columbia do take into his possession the whole estate of Robert Young, deceased, and make sale of so much thereof by public auction as the payment of debts shall make necessary; or as shall be perishable; or be directed by his last will and testament,

[1] [Reported by Hon. William Cranch, Chief Judge.]

if any there be. to be sold; and he is further ordered to sue, if necessary, for the recovery of debts due to the said estate, or of goods and chattels; and to make a true and perfect inventory of the whole of said estate, and an account of sales thereof; and to return the same together with the bonds taken by him from purchasers, to this court. A copy. Teste: A. Moore, Reg. Wills."

"At a session of the orphans' court for the county of Alexandria. in the District of Columbia, the 7th day of December, 1825, the marshal of the District of Columbia appealed from the above order of the court, to the circuit court of the District of Columbia for the county of Alexandria. A. Moore, Reg. Wills."

CRANCH, Chief Judge, delivered the opinion of the court.

This order is supposed to have been made under the act of Virginia, December 13, 1792, § 61, p. 167, which provides that if all the executors shall refuse, &c., or, in case of an intestate estate, if no person will apply for administration, "it shall be lawful for the general court, or other court having jurisdiction of such probate or administration, after the expiration of three months from the death of the testator or intestate, to order the sheriff or other officer of the county or corporation to take the estate into his possession and make sale of so much thereof, at public auction, as the payment of debts shall make necessary; or as shall be perishable, or be directed by will, to be sold; and all sales and conveyances bonâ fide made by the sheriff or his deputies, or other officer, in consequence of such order, shall be as effectual to the purchasers as if they had been made by the testator in his lifetime. The estate shall be sold upon such credit as the court shall direct, and upon public notice previously given; the purchasers giving bond and good security for payment according to the limited time of credit." He is also authorized to sue for debts or property due to the deceased, and required to return to the court an inventory and account of sales, and the bonds taken from purchasers, &c.

Without inquiring whether the marshal is bound to obey the order of the orphans' court, if made in a case within the terms of the act of Virginia, it may be observed that it does not appear in the record that Robert Young died in the county of Alexandria, or left any estate therein; nor whether he died testate or intestate: nor, if testate, that all the executors refused to act or to give bond; nor if intestate, that no person had applied for administration; nor that three months had expired since the death of Mr. Young; all which facts ought to have been ascertained before the order could be regularly made. We think, therefore, that the sentence of the orphans' court might be reversed upon that ground. But as it is understood that the parties concerned wish to obtain the opinion of the court upon the question whether the marshal is bound to obey such an order in any case which can be made under the act of Virginia, we are willing to consider that question.

The first objection to the order, is, that the marshal is not a county or corporation officer, but the officer of the whole district; and the orphans' court could only make the order to some officer of the county or corporation. This seems to us to be a valid objection. It is not a duty devolved upon the sheriff of any county, as such. He is only designated as one of the officers whom the court may, under the act of Virginia, order to make the sale; but the court may appoint any other officer of the county, or even of the corporation. It is said that the marshal is bound to perform. in the respective counties of this district, all the duties which the sheriffs in Virginia and Maryland, respectively, were bound to perform in their respective counties on the 27th of February, 1801, when the jurisdiction of those states ceased over this district; and that the laws of Virginia, then in force in the county of Fairfax, continued to be in force in the county of Alexandria. It is said also that there are certain fees, given to the sheriff in Virginia, which the marshal has claimed here, and which he can only claim by identifying himself with the sheriff; and that he has been in the habit of performing certain duties which he could not perform, nor be compelled to perform unless by a similar identification. That by the first section of the act of congress of March 3, 1801 (2 Stat. 115), officers "for whom no special provision is made" by that act, or the act of February 27, 1801 (2 Stat. 103), "shall receive the same fees and emoluments as they have respectively received under the jurisdiction of the respective states;" and it is intimated that the marshal, under that clause of the act, charges, for summoning a coroner's jury, by order of the coroner, the same fee as the sheriff of Virginia does. But that clause of the act does not affect the marshal because he is an officer "for whom special provision is made" by the act of February 27. 1801, § 9 (2 Stat. 103). By the Virginia law of November 29, 1792 (Rev. Code, § 6, p. 125), the coroner is to "issue his precept to the sheriff, sergeant of a corporation, or constable of the county or corporation, directing him to summon at least twelve freeholders," &c.

If the marshal has executed such precepts, it does not follow that he was bound to do so, nor that he could lawfully demand fees for executing them. By the act of congress of March 3, 1807 (2 Stat. 430), the marshal is entitled to receive "for such services" in Alexandria county, "as are not enumerated in that, or some other act of congress, the like fees as by the laws of Virginia, prior to the first Monday in December, 1800, were allowed to a sheriff of a county for like services." By this act, he receives his fees, not

because he is identified with the sheriff of Virginia, but because the act gives him, as marshal, the like fees as a sheriff in Virginia would have received for like services. There is no act of congress which declares that he shall perform all the duties required of a sheriff under the laws of Virginia.

It is said also that the marshal executes the process of the orphans' court, and charges the fees allowed, by the laws of the states, to the sheriffs. These fees he is entitled to receive under the act of March 3, 1801 (2 Stat. 115), or the act of February 27, 1801 (2 Stat. 103). By the judiciary act of September 24, 1789, § 27 (1 Stat. 73), it is the duty of the marshal "to execute, throughout the district, all lawful precepts, directed to him, and issued under the authority of the United States." Whatever process he executes, or whatever fees he receives, he executes and receives as marshal, and under the authority of the United States. By the seventh section of the act of congress of February 27, 1801 [2 Stat. 106], "concerning the District of Columbia," it is enacted that there shall be a marshal for the said district, who shall have the custody of the jails of the said counties, and be accountable for the safekeeping of all prisoners legally committed therein; and he shall be appointed for the same term, shall take the same oath, give a bond with sureties in the same manner, shall have, generally, within the said District, the same powers, and perform the same duties, as is by law directed and provided in the case of marshals of the United States. And by the ninth section of the same act, he was entitled to receive, for his services, the same fees which were by law allowed to the marshal of the district of Maryland.

By the twenty-seventh section of the judiciary act of September 24, 1789 [1 Stat. 87], the duties of a marshal are thus described:—"Whose duty it shall be to attend the district and circuit courts, when sitting therein, and also the supreme court in the district in which that court shall sit; and to execute throughout the district, all lawful precepts directed to him, and issued under the authority of the United States; and he shall have power to command all necessary assistance in the execution of his duty; and to appoint, as there shall be occasion, one or more deputies," &c., "and shall take the following oath of office: 'I A. B. do solemnly swear, or affirm, that I will faithfully execute all lawful precepts directed to the marshal of the district of —— under the authority of the United States, and true returns make; and in all things well and truly, and without malice or partiality perform the duties of the office of marshal of the district of —— during my continuance in said office, and take only my lawful fees, so help me God." By the twenty-eighth section of the same act he has power, notwithstanding his removal from office, to execute all precepts then in his hands; and is bound to deliver over all prisoners to his successor. By the third section of the act of congress of February 28, 1799 (1 Stat. 624), his fees for certain services are regulated; and "for all other sevices not herein enumerated he is to receive such fees or compensation as are allowed in the supreme court of the state where the services shall be rendered." By the fourth section of the act of May 8, 1792 (1 Stat. 277), he is to have the custody of vessels and goods seized by officers of the revenue; to pay the contingent expenses of holding courts, and of criminal prosecutions; and by the seventh section he is liable to fine and imprisonment for taking unlawful fees. By the act of February 28, 1795, seventh and eighth sections (1 Stat. 425), he is to collect the fines imposed by certain militia courts-martial; and by the ninth section, it is enacted, "That the marshals of the several districts and their deputies shall have the same powers, in executing the laws of the United States, as sheriffs and their deputies in the several states have, by law, in executing the laws of the respective states." By the eighth section of the act of March 2, 1793 (1 Stat. 333), he is to cause appraisement to be made of goods taken in execution, if such appraisement be required by the state laws.

By the act of February 27, 1801 (2 Stat. 103), the laws of Virginia, as they then existed, were continued in force in the county of Alexandria. Among these is the act of Virginia before recited, which autho iz s any court, having jurisdiction of probate and administration, to order a county officer to sell the estate of deceased persons in certain cases. If we should admit, that, by that act, the duty devolved on the sheriff of a county, as sheriff, yet we can find no law that imposes it on the marshal of a district including two counties. But it does not devolve on the sheriff as such. He is only designated as one of the county officers upon whom the court may impose the duty. But by the twelfth section of the act of February 27, 1801 (1 Stat. 103), the powers and duties of the judge of the orphans' court for the county of Alexandria, are limited by the laws of Maryland; not by the laws of Virginia. No such power to compel the sheriff to administer, is given by the laws of Maryland. If the marshal be not identified with the sheriff, it is said, he may take bond, from persons in his custody, for matters relating to his office, otherwise payable, than to himself as marshal, and for the appearance of the prisoner, and that such bond will not be void under the statute of 23 Hen. VI. c. 9. This may be so, and if there be no law that prevents other marshals from taking such bonds, we conclude that it is so. His powers and duties are limited by the general laws of the United States, respecting the powers and duties of marshals, unless enlarged by particular acts of congress. If other marshals may take such bonds we see no law to prevent him from taking them. It is also said that if the marshal be not identified with the sheriff, he may

take more than legal fees, contrary to the Virginia act of November 23, 1791 (section 18). He cannot impress guards for the jail, under the twenty-third section of the same act. He cannot claim a summary remedy against his deputy, under the twenty-fifth section of the same act. He is not liable to the penalty prescribed by the eleventh section of the Virginia act of December 10, 1793, for not indorsing upon an execution the time of receiving it. He is not bound by the laws respecting the manner of executing process, and writs of execution, and the taking of forthcoming bonds, &c. But however these matters may be, we are satisfied that the judge of the orphans' court in Alexandria, has no power under the law of Virginia, to compel any person to administer upon an estate contrary to his will; and if he had, he cannot compel the marshal of this district to do it. We think, therefore, that the sentence of the orphans' court must be reversed.

Sentence reversed.