## Bush *v.* United States.

*(Circuit Court, D. Oregon. November 8, 1882.)*

PRIORITY OF THE UNITED STATES.

 The priority of the United States under sections 3466, 3467, of the Rev. St. does not attach in the life-time of an insolvent debtor unless his property is taken by process of law, as in bankruptcy, insolvency, or attachment, or he makes a voluntary assignment thereof to a third person for the benefit of his creditors; and a judgment or judgments confessed by such debtor for an amount equal to the value of his assets, with intent to hinder, delay, or defraud the United States, is not such an assignment.

Bill of Review.

*George H. Williams*, for plaintiffs

*James F. Watson*, for defendants.

DEADY, D. J. This case was before this court on October 2d,[*] on a motion of the district attorney to dismiss the bill of review for want of jurisdiction. The motion having been denied, the defendant demurred, and the cause was argued and submitted on the bill and demurrer.

The first question for consideration is, had the United States, upon the facts stated and found, a right of priority of payment out of the property of Griswold on January 6, 1879, by virtue of section 3466 of the Revised Statutes? which reads:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

At this date it appears that Griswold confessed judgments to sundry persons for an aggregate sum, which, together with his indebtedness to the United States and sundry mortgage creditors, far exceeded the value of his assets, and that said judgments, with the exception of the one to the plaintiffs herein for $348.82, were based upon fictitious claims and confessed with the intent to hinder, delay, and defraud the United States in the collection of a claim against Griswold, then in suit in this court, and upon which it obtained judgment against him, on July 30, 1879, for $35,228, and $2,821.60 costs and disbursements. Upon this state of facts it was tacitly admitted by counsel, and assumed by the court, on the hearing of the original case, that the priority of the United States attached to the property of Griswold, subject to the liens of the valid mortgages thereon. It is admitted that the statute giving the priority of payment was not applicable to this case, unless Griswold had made a voluntary assignment of his property; and it is also admitted that he had not done so, unless the confessing of these judgments amounted to such assignments.

[*]See 13 FED. REP. 625.

There is no doubt but that the effect of these judgments by means of the lien they carried, when docketed, unless set aside at the suit of creditors for fraud, was practically to transfer whatever interest Griswold had in the property in question to the plaintiffs therein. But, upon further reflection and examination, I am satisfied that they did not amount to or operate as an assignment within the purview of the statute. The latter is only applicable to cases where the debtor's estate, either by his death, legal bankruptcy, or insolvency, has passed into the hands of an administrator or assignee for the benefit of his creditors, or where the debtor himself has voluntarily made such disposition of it. It does not apply, then, to a conveyance, assignment, or transfer, by whatever means accomplished, to a real or pretended creditor or creditors in payment or satisfaction of a debt or claim. There must be in some way an assignment of the debtor's property to a third person for distribution among his creditors before the statute can be invoked, and then it operates directly upon the assignee by requiring him to pay the claim of the United States first, and making him personally liable therefor if he does not. Section 3467, Rev. St. The following authorities bear, with more or less directness, upon these conclusions: *U. S.* v. *Fisher,* 2 Cranch, 390; *U. S.* v. *Hooe,* 3 Cranch, 90; *Conard* v. *Atlantic Ins. Co.* 1 Pet. 438; *Beaston* v. *Farmers' Bank of Delaware,* 12 Pet. 132; 1 Kent, Comm. 247; *U. S.* v. *Canal Bank,* 3 Story, 81; *U. S.* v. *McLellan,* 3 Sumn. 350; Conkl. Treat. 723.

It follows that so much of the decree as provides that lot 8, in block 10, and the W. $\frac{1}{2}$ of lots 1, 2, 3, and 4, in block 73, in the town of Salem, shall be subject to the payment of the judgment of the United States, after they have been sold on legal process from the state court and before the entry of said judgment, upon the assumption that the priority of the United States had attached thereto prior to such sale, to-wit, on January 6, 1879, is erroneous and must be reversed, and a decree entered dismissing the bill as to the plaintiffs in error.