## AMBLER *v.* ARCHER.

Jurisdiction of this Court; Contracts; Corporations; Public Policy; Equity Pleading.

1. Under the act of Congress of February 9, 1893, creating this court and abolishing the appellate jurisdiction of the Supreme Court of the District of Columbia, this court has power to hear and determine causes pending on the date of the act in the general term of that court upon certification from its special terms to be heard there in the first instance.

2. Where a contract, which is sought to be enforced against a corporation, is in contravention of the provisions of the law under which such corporation was organized, none of the parties to the contract can be heard in a court of equity to ask for its enforcement or be allowed aid in avoidance of its provisions.

3. The provision of the general incorporation laws of this District, prohibiting the use of any of the funds of a corporation organized thereunder in the purchase of any stock in any other corporation, is founded in a wise and beneficial policy intended to afford protection to those dealing with, or who may be interested in the solvent condition of local corporations, and that policy should be strictly upheld.

4. The bill in this case held to be demurrable for multifariousness and misjoinder of parties defendant.

5. A foreign corporation is not subject to suit and to a general accountability in this District by reason of the residence here of some of its officers, where such officers are not here in their official or representative capacity and it is not shown that they are clothed with authority to represent and answer for the corporation.

No. 13. Submitted May 23, 1893.—Decided September 5, 1893.

Hearing on a demurrer to a bill in equity, transferred to this court under the act of Congress of February 9, 1893, 27 Stats., 434, from the General Term of the Supreme Court of the District of Columbia, where it was pending at the date of the act upon certification from an equity term of that court to be heard in the first instance. *Demurrer sustained and bill dismissed.*

The facts are set forth in the opinion.

*Messrs. Willoughby & Willoughby* for the appellants :

1. This bill is filed by the complainant as a stockholder in an incorporated joint stock company against the directors of the

company, making the company and a predecessor parties
defendant to this cause, the last company having succeeded
to the rights of the first in many respects. The bill is made
up of charges of gross negligence and fraud against the
directors, by which the company has been defrauded, and by
reason of which the company, and the complainants as
stockholders in the company, have suffered, and the direc-
tors are called upon to make discovery of their doings and
account to the company, so that the injuries suffered by the
complainants as such stockholders may be redressed, it being
charged that the directors have refused, upon demand of the
complainants, to cause such discovery and account to be
made. Such a bill is cognizable by a court of equity.

2. Directors are personally liable as trustees for loss oc-
casioned by willful abuse of their trust, or by the misapplica-
tion of the funds of a moneyed or other joint stock cor-
poration. And they are equally liable if they suffer the cor-
porate funds or other property to be lost or wasted by gross
negligence or inattention to the duties of their trust. *Rob-
inson* v. *Smith*, 3 Paige Ch., 222.

3. The primary party to sue for a breach of trust by the
directors, is the company, but if the corporation refuses to
sue, the stockholders may sue in their individual names.
*Ogden* v. *Kip*, 6 Johns. Ch., 160; *Atty. Gen.* v. *Utica Ins.
Co.*, 2 Johns. Ch., 389; *Hodges* v. *New England Screw Co.*,
1 R. I., 312; *Angell & Ames on Corporations*, 304-5. Any
holder of a single share may bring suit. *Morawitz on Corp.*,
Sec. 408. See also the following authorities: *Koehler* v.
*Black River Falls Co.*, 2 Black, 715; *Hunn* v. *Leary*, 82 N.
Y., 65; *Angell & Ames on Corp.*, Secs. 312 to 315; *Wat-
kins* v. *Stewart*, 78 Va., 111, 21 Grat., 194; *Ryan* v. *Leaven-
worth R. R. Co.*, 21 Kan., 365; *Dodge* v. *Woolsey*, 18 How.,
331; *Marshal* v. *Bank*, Va. Law Journal, January, 1889;
*Hoole* v. *Gr. West. Ry. Co.*, L. R. 3, Ch. 272; *Russell* v.
*Wakefield Water Works*, L. R. 20, Eq. 474, 481; *Simpson*
v. *Westminster Hotel Co.*, 8 H. L. C., 712.; *Howes* v. *Oak-
land*, 104 U. S.

*Messrs. McDonald, Bright & Fay,* and *Messrs. Edwards & Barnard* for appellees:

1. The bill does not state a case entitling complainants to any discovery or relief in equity. In a bill seeking a discovery, the rule is that the complainant must charge in his bill that the facts are known to the defendant and ought to be disclosed by him, and that the complainant is unable to prove them by other testimony. *Brown* v. *Swan,* 10 Pet., 498. No such foundation is laid in the present bill.

2. The bill is multifarious, joining several distinct pretended matters of different natures, and is, therefore, demurrable. *United States* v. *Bell Telephone Co.,* 128 U. S.; *Brown* v. *The Guaranty Trust Co.,* Id., 410.

3. The complainants have a plain, adequate and complete remedy at law.

4. The bill is demurrable for misjoinder of parties defendant.

5. It does not comply with rule 20 of the equity rules of the Supreme Court of the District of Columbia. It is not expressed in brief and succinct terms as required by that rule, and one-third of it is taken up by an unnecessary exemplification of documents which extends the body of the bill beyond any reasonable dimensions besides increasing the expense of taking out copies and confusing both court and counsel.

*Mr. S. S. Henkle* of counsel for appellees:

1. All of the capital stock issued by the International Vapor Fuel Carbon-Iron and Manufacturing Company, incorporated under the general incorporation laws of the District of Columbia, was illegal, the same not having been paid up as required by Sec. 564, R. S. D. C. That held by the complainant Ambler was not paid for in money as required by Sec. 565, R. S. D. C., nor was that held by the defendant directors. The complainant, as one of the organizers and stockholders of the company, being *in pari delicto,* is estopped from demanding of the other stockholders that they

shall pay up in cash. And he cannot have the aid of a court of equity in attempting to hold the directors liable for not collecting money from the other subscribers and letting him go free.

2. If there be any cause of action against any of the defendants the bill has so mixed and confused complaints against individuals and companies having no common interest or relations that it is impossible to reach a definite issue upon anything charged in it.

The CHIEF JUSTICE delivered the opinion of the court:

This case has been pending for several years. The bill as originally filed was demurred to, and the demurrer was sustained upon the ground that the bill was multifarious. Under leave given, the bill was amended, or at least a few alterations were made in some of its allegations. It was again demurred to, upon several grounds:

1st. That the bill failed to disclose any such case as entitled the complainants to discovery or relief, as against the defendants.

2d. That the bill is multifarious; and that there is a misjoinder of parties.

3d. That the complainants had ample remedy at law; and,

4th. That the bill is framed in total disregard of the equity rules of the court, and that it is uncertain, informal, and otherwise grossly violative of the established rules of equity pleading.

The case coming on to be heard on the demurrer at special term, it was, on the 15th of April, 1890, by order of the Justice sitting therein, by virtue of Section 800 of the Revised Statutes relating to the District of Columbia, certified to the general term of the Supreme Court of the District, to be there heard in the first instance. And the cause being there pending *undecided* at the time this court was organized, under the act of Congress, approved Feb. 9, 1893, it was transferred to this court under the *proviso* in the seventh section of that act. And the preliminary question arises, on

the case so brought into this court, whether the case is properly here under this statute?

The *proviso* in the sections of the statute referred to declares: "That all causes now [then] pending before the said Supreme Court in general term, together with the original papers and record entries duly certified, shall by appropriate orders duly entered of record, be transferred and delivered to the Court of Appeals hereby created; which said Court of Appeals is hereby vested with authority and jurisdiction to hear and determine the causes so transferred." It is then further provided that "the *appellate power and jurisdiction* of said general term is hereby abrogated and abolished, and. no causes shall hereafter be heard in the said general term."

It is quite clear that the general term of the Supreme Court of the District is not abolished, but only its appellate power and jurisdiction. But full effect must be given to all the terms employed in the provisions of the act; and the broad mandatory terms, "*all causes* now pending before the Supreme Court in general term," shall be transferred, would seem fully to embrace the causes then pending under special order of reference, such as was made in this case. This reference to the general term was a regular step in the proceedings under the statute, and was intended to obtain the judgment of the court in general term in the first instance, instead of waiting and obtaining it by the method of appeal from the judgment at special term. Causes thus brought into the general term, as well as those taken there by way of appeal, are hereafter prohibited from being heard in general term. The case, we think, is clearly within the provision of the statute, and is properly before us. And being here to be heard as in the first instance on demurrer, the defendants had the right to open and close the argument in support of their demurrer.

In many respects, the bill in this case is a remarkable one. It is with some difficulty that we are enabled to determine what is really the true gravamen of the bill, owing to the very prolix manner of statement, the irrelevant narratives, the

many and long recitals of documents, and more than all, the combination of numerous causes of complaint growing out of alleged violations of contracts, the breaches of trust, and the acts of malfeasance and non-feasance of trustees or directors of certain corporations, in the stocks and operations of which the complainants allege themselves to be largely interested.

The complainants sue, as is apparent from the allegations of the bill, in the double capacity of stockholders in two corporations, and as *cestuis que trust* under certain contracts of assignment of patents or patent rights to one of the corporations. They say in their bill that they sue as stockholders of the Vapor-Fuel Company, a corporation formed under a special charter granted by the Legislature of the State of Virginia. But they go back of that corporation, and allege voluminous contracts and transactions with the promoters and trustees or directors of a pre-existing corporation, called the International Vapor-Fuel, Carbon-Iron and Manufacturing Company, a corporation organized under the general incorporation laws of the District of Columbia. They make both of these corporations parties defendants, and they also make the directors of the Virginia corporation defendants, together with Richard J. Bright, who was a former director. They allege that these directors were promoters of and directors in the corporation formed under the law of this District, and also the originators of the corporation formed under the laws of Virginia.

In the allegations made, if we understand them aright, the liability of individuals on the contracts set out in the bill; the legality of the stock issued on the formation of the corporation under the law of the District; the legality of the transfers of the capital stock and assets of that corporation to the corporation formed under the laws of Virginia, are questions involved. And so is involved the question of the liability of a foreign corporation to be sued and called to an account in the courts of this District for and in respect of all their corporate transactions occurring in other jurisdictions.

It appears from the allegations of the bill that A. I. Ambler, one of the complainants, was an inventor, and had invented and obtained letters patent for the exclusive use of certain gas generators and vapor fuel machines, and for certain improvements thereon; and it also appears that some of these patents had been assigned, and some of them were in pledge for advances made thereon.    It also appears that Ambler had instituted litigation in several of the courts of the country for alleged infringements of these patents; and also that his wife, the other complainant, held by assignment certain patent rights.    It was on this state of things that the contract of the 22d of May, 1880, referred to and recited in the bill, was entered into, reciting previous contracts and understandings between the parties, and under and in respect to which the corporation in the District of Columbia was formed, to utilize and make valuable the patent rights owned by Ambler and his wife.    The agreement contains many stipulations in ·respect to the terms and conditions upon which the patent rights were to be vested in and form the basis of the proposed corporation; and, among others, that the patents subject to charges in the hands of third parties were to be redeemed by the promoters of the proposed corporation, and their integrity vindicated and protected, and certain claims for the infringement thereof collected.

In the organization of the corporation in the District of Columbia, in May, 1880, the capital stock was fixed to consist of $2,000,000, divided into 20,000 shares of $100 each, and of these 9,500 shares were allotted to the complainants for and in respect of their patent rights; and to the other contracting parties the remaining 10,500 shares were allotted. The shares allotted to the complainants were to be treated *as fully paid up shares*, and of the shares allotted to the other contracting parties, 4,000 shares *only* were to be assessable to the *extent of ten per cent., and no more*, for working capital.    This was strictly in accordance with the agreement for the organization of the company, to which the complainants were parties.    It is not pretended that any money

was paid for the stock, or that it was within the contemplation of any of the parties that money should be paid therefor, except to the extent of ten per cent. on the 4,000 shares.

It is alleged that the patent rights of the complainants were to be, and were, accepted by the corporation as the consideration for the stock issued to the complainants; but that there was nothing paid to the corporation on the other portions of the stock; and one of the grounds of complaint is, that the directors of the corporation have failed and neglected to collect and realize to the corporation the par value of the shares of the stock from the holders thereof. It is charged in the bill, " that in consideration of said assignments of patents, and of said judgments, suits and claims which they, the complainants, had against different parties, and which patents alone were agreed to be of the value of $950,000, and were accepted as of that value; and the said J. B. Archer and his associates were bound to contribute for the benefit of the company 10,500 shares of said stock of the par value of $1,050,000, subject to the said agreement in relation to the said 4,000 shares, in regard to assessment, *provided said assessment could be lawfully sustained under the statute of the District* in such cases made and provided ; and the complainants, as stockholders of said company, had the right to insist, and still have the lawful right to insist, upon the collection of this amount from the said J. B. Archer and his associates, including the defendants in this bill, for the benefit of said company; and the directors of the said company, and their successors, were and still are chargeable and are now charged, with the duty of collecting the same."

This claim and contention of the complainants make it necessary that we examine the provisions of the law under which this stock was subscribed for and accepted by the parties, according to the agreement of the 22d of May, 1880.

By Sec. 564, Revised Statutes United States, in the general incorporation law of this District, under which the corporation in question was organized, it is provided that " The capital stock so fixed and limited shall be paid in, one-half

within one year, and the other half thereof within two years from the incorporation of the company, *or such corporation shall be dissolved.*" And by the next succeeding section it is provided that " Nothing but money shall be considered as payment of *any part* of the capital stock."

It is very clear that the complainants, being parties to the contract of the 22d of May, 1880, and accepting the stock of the corporation in accordance with that contract, are in no position to insist upon the payment of, or accountability for, the full par value in money of the stock held by the other parties to the contract. This contract under which the stock of the corporation was allotted to and accepted by the parties was in manifest contravention of the express provisions of the statutes, and that being so, none of the parties to such contract can be heard in a court of equity to ask for its enforcement, or be allowed to receive aid in avoidance of its provisions. The parties are all *in pari delicto*; and a court of equity furnishes no remedy to either as against the other parties to the contract thus made to contravene the law.

The complainants also charge in their bill, that the defendant Archer and his associates, as part of the scheme for utilizing and making profit of the patent rights of the complainants assigned to the original company, formed a corporation under the general incorporation laws of the District, called the Potomac Manufacturing Company, to operate and carry on the business in Alexandria, in the State of Virginia, and that a large amount of the stock thereof was sold and disposed of, and property was acquired; and that subsequently the parties obtained from the Legislature of Virginia a special charter, under which the corporation was reorganized, and all the rights, franchises and property of the original Potomac Manufacturing Company were wrongfully transferred to the newly organized company under the laws of Virginia. It is alleged that the parties so organizing this Potomac Manufacturing Company have derived large profits by the sale of stock and otherwise, by means of this corporation, but that they have not accounted

for any part thereof, and the complainants pray discovery in relation thereto.

It is also alleged, that the defendant Archer and his associates, procured to be formed several auxiliary or subordinate corporations in different States of the Union, and also in Europe, to bring into use and profit the patent rights assigned by the complainants, and that large profits have been received therefrom by said parties, but have not been accounted for. And though such corporations have not been made parties to the bill, discovery is prayed of their operations, and of the profits received therefrom.

It is further alleged, that in February, 1882, Archer and his associates, R. J. Bright, A. L. Roache, W. B. Moses, R. B. Nixon, D. P. Holloway, and H. W. Blair, obtained, without the knowledge of the complainants, from the Legislature of Virginia, a charter for the incorporation of the Vapor-Fuel Company, one of the defendant corporations in this bill, and that the company was organized with a capital stock of $2,000,000, divided into 20,000 shares of $100 each, and that said capital stock was afterwards increased to $5,500,000. That by this Virginia charter, the company was authorized and empowered to acquire and own such real estate as should be deemed necessary, and to sell and convey the same at pleasure; and to acquire and own all such patents and patent rights as might be desired, and to grant licenses at pleasure to persons and corporations to use the same, and to make and vend machinery, &c. And by the tenth section of the charter, the company was authorized and empowered, by its board of directors, to acquire the property, patents and all rights and franchises of the International Vapor-Fuel, Carbon-Iron and Manufacturing Company of Washington City, &c., at such prices and on such terms as might be agreed on by the respective companies; and were authorized to pay for the same in the capital stock of the said Vapor-Fuel Company, and the latter company was authorized to issue such an amount of stock to the Washington city corporation or its stockholders as might be necessary for the

purpose. The company was also authorized to issue its stock as fully paid up and non-assessable stock. And, according to the allegations of the bill, all the property, rights, privileges and franchises of the International Vapor-Fuel, Carbon-Iron and Manufacturing Company of this District were assigned and transferred to the Vapor-Fuel Company of Virginia, and the stock of the latter company was issued therefor as fully paid up and non-assessable, and of that stock the complainants received their proportionate shares, and still hold the same, such shares having been allotted to them for and in respect of their stock held in the Washington city corporation.

What may have been the object or purposes sought to be accomplished by the formation of the Virginia corporation and the transfer thereto of all the rights and property of the Washington city corporation, is not very apparent, though it may be reasonably conjectured that it was to avoid the limitations and restrictions in the general incorporation laws of the District. But whatever the object in view, there was in the proceedings a gross violation of the law of the District, for it is expressly provided in section 569 of the revised statutes relating to the District of Columbia, that, " It shall not be lawful for any company to use any of their funds in the purchase of any stock in any other corporation." Here the District corporation sold out all its property and rights for stock in the Virginia corporation—a transaction expressly prohibited. And to this illegal transaction the complainants were parties, having received the stock of the Virginia corporation—the price of the illegal sale. This may be regarded as legal in Virginia, and the courts of that State may sanction and enforce it, because authorized by the Legislature of that State. But the courts in this District can give no sanction to it, because it violates an express provision of a statute in force here. That provision of the law is founded in a wise and beneficial public policy, intended to afford protection to all dealing with, or who may be interested in the solvent condition of the corporation, and the courts should strictly uphold and enforce that policy.

The complainants charge malfeasance and non-feasance on the part of the directors of the Vapor Fuel Company of Virginia in many particulars. They charge that the directors violated their trust and duty in failing to collect the subscriptions of Archer and his associates for the 10,500 shares of the stock of the International Vapor-Fuel, Carbon-Iron Manufacturing Company, the same being a part of the assets and property of that company transferred to the Virginia company, its successor; also in converting assessable stock to its full par value in the original District corporation (according to the laws of this District) into non-assessable stock of the Virginia corporation, without authority of law, and selling and disposing of the same as non-assessable stock; also, in failing to have an account rendered of large amounts of money, stock, and other property which came into the possession of the Virginia corporation; also, in converting large amounts of stock, and the proceeds thereof, to their own use, without accounting therefor; and also in failing to require Archer to render an account of all profits made by him by the use of patents belonging to said company, and by the use of patents which were direct and plain infringements on the patents of the complainants assigned to the company. The complainants allege that for these and other violations of trust, of which they are unable to give the full particulars, the defendants, directors of the Vapor Fuel Company, *are personally responsible to the said company, and to these complainants as stockholders thereof*; and for all damages and injury arising from the said breaches of trust for which they are chargeable, as in the bill charged.

The bill prays for multifarious relief. It prays for discovery of all the books, papers, contracts, and transactions of the two corporations, the one of the District and the other of Virginia, and that accounts be taken; that accounts be taken of all moneys, stocks, and property received, and to which the Virginia corporation may be entitled from subordinate corporations formed upon the basis of any of the patents owned by said company, or by said Archer, which

should appear to be an infringement upon any of the patents owned by said company; that accounts may be taken showing the interest, condition, and value thereof, in said subordinate corporations, formed upon the basis of said patents, &c.; that the interest of the complainants be declared in all the matters aforesaid, and that the defendants, and each of them, be decreed to be liable to the complainants for the amounts ascertained to be due them upon such accounting, &c.

On the foregoing statement of the principal charges and scope of the bill, it is very clear that the demurrer thereto must be sustained. In the first place, the demurrer must be sustained because the statements in the bill show that the complainants are not in such position in respect to the formation and the issue of the stock of the two corporation defendants as to entitle them, in a court of equity, in this jurisdiction, to the relief prayed. In the second place, the demurrer must be sustained, because the bill is grossly multifarious, and violates the established rules of equity pleading; and, in the third place, because of the joinder of improper parties as defendants.

It is not charged or shown that the Vapor Fuel Company of Virginia is located here, or that it has a place of business here, or attempts to conduct any portion of its business in this District. It is strictly a foreign corporation, and as such it is not subject to suit and to a general accountability here. The mere fact that some of the directors of the company may reside here, or that they are stockholders, does not alter the case. For any matter or cause rendering them personally responsible, of course, they are suable here, but not in their official or representative characters to bind the foreign corporation. They are not here in their official or representative capacity, and it is not shown that they are clothed with authority to represent and answer for the corporation in this suit. And without such authority, express or implied, it would seem to be a settled principle that the corporation is not liable to suit in a jurisdiction foreign to its creation, and where it does not transact business. This would seem to be

fully settled by the Supreme Court of the United States in the case of *St. Clair* v. *Cox*, 106 U. S., 350, 354 to 358, and cases there cited. The Vapor Fuel Company of Virginia has been, therefore, improperly joined as not being liable to suit in this jurisdiction.

It follows that the bill of the complainants must be dismissed, with costs to the defendants. But as the complainants may think proper to take proceedings in another jurisdiction in respect to some of the matters involved in this case, and as the merits of such matters have not been considered here, the bill will be dismissed without prejudice. *Swan Land and Cattle Co.* v. *Frank*, 148 U. S., 603, 612.

*Bill dismissed.*