EZRA GOULD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MERCHANTS BANK & TRUST CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21727, 21728. Promulgated December 19, 1930.

*Evert L. Bono, Esq.*, for the petitioners.
*J. A. Lyons, Esq.*, for the respondent.

OPINION.

ARUNDELL: The question of the constitutionality of section 280 of the Revenue Act of 1926 has heretofore been urged in a number of cases and we have held, ever since the decision in *Henry Cappellini*, 14 B. T. A. 1269, that a person against whom a transferee liability is asserted and who appeals to this Board may not question the validity of the statute.

We will consider first the question of whether the petitioners are liable as transferees of property of the Dupont Bank. The burden of proving such liability is placed on the respondent by section 912 of the Revenue Act of 1926, which was added by section 602 of the Revenue Act of 1928.

The evidence fails entirely to establish that petitioner Ezra Gould is liable as a transferee of the Dupont Bank. Throughout the negotiations which culminated in the consolidation of the two banks he acted solely as an agent. The stock book of the Dupont Bank shows 10 shares standing in Gould's name on March 22, 1922, and indicates that it was redeemed by him as liquidating agent between that date and April 6, 1922. However, Gould's testimony is clear and uncontradicted that at that time he did not own any stock in his own right and any stock that might have been in his name was not owned by him. Moreover, the complete list of checks drawn by him as liquidating agent fails to disclose any amount paid to himself. We are satisfied that Gould did not own any stock at the time of liquidation and that he received nothing as a stockholder. The fund that was placed to his credit on the books of the Merchants Bank was disbursed by him, as agent, in buying up the stock of the Dupont Bank and no part of it was retained by him. As far as the record shows he received nothing in his own right from either bank.

As to the Merchants Bank the situation is different. At the beginning of the negotiations it was the intention of the Merchants Bank to effect the consolidation by purchase of the stock of the Dupont Bank. After acquiring by assignment the contract of purchase of the 1,423 shares owned by Hibbs and Spaid and assuming the liability for payment of the balance due on the purchase, it was advised that it could not legally acquire the stock. It has not been pointed out what provision of law is involved, but we presume that it is section 620 of District of Columbia Code, which provides that "It shall not be lawful for any company to use any of their funds in the purchase of any stock in any other corporation." Neither party claims and we will not assume that under this provision the stock purchase by the Merchants Bank was void. Such statutes are usually construed as rendering the transactions voidable at the instance of a party in interest or the state. Cf. *Cortez Oil Co.*, 20

B. T. A. 462; *Ambler* v. *Archer*, 1 App. D. C. 94; *Barron* v. *McKinnon*, 196 Fed. 933. In the absence of any showing that such was the case, we are unwilling to say that the purchase was void in this case, in view of the fact that after the Merchants Bank was advised of the illegality of the transaction it completed it by having Gould pay off the balance of the note given to cover the purchase price. Moreover, counsel for both parties insist that the Merchants Bank actually purchased the 1,423 Dupont shares from Hibbs and Spaid. Their contentions in this respect are amply supported not only by the documentary evidence, but also by the oral testimony of the witnesses in the case. The adoption of resolutions for the voluntary liquidation of the Dupont Bank and the sale of its assets were merely formalities for the purpose of complying with requirements governing the consolidation of National banks with other banks. As Gould, the liquidating agent, put it: " * * * what I was required to do by the Treasury Department was just a matter of procedure and law. There were certain ways that it had to be done, and we did it just as directed by the Treasury Department. * * * Now, just how I did it, I do not know, only we would go down to the Treasury Department and they would tell us how to do it."

The evidence is also clear that the resolutions authorizing a sale of the assets of the Dupont Bank were never carried out to the extent of consummating a formal sale. No formal conveyance of its assets was executed by the Dupont Bank, except possibly a deed to the real estate as to which the record is not clear.

What actually occurred is that the Merchants Bank, owning more than two-thirds of the Dupont Bank stock (a two-thirds vote being necessary to place a National bank in voluntary liquidation, sec. 5220 R. S.; § 181, Title 12 U.S.C.A.) placed the Dupont Bank in liquidation and took over its assets and assumed its liabilities. Such stock as the Merchants Bank did not own at the time of the vote for liquidation it acquired by purchase out of the fund placed to Gould's credit. In this view of the case it is clear that the Merchants Bank is liable as a transferee of the assets of the Dupont Bank, for when it took over the Dupont Bank's assets that bank was left without means of satisfying its creditors.

As indicated above, we regard the adoption of the stockholders' and directors' resolutions as mere matters of form, but even if they can be considered as reflecting the substance of the transaction, we would still reach the same conclusion. If we regard the $360,000 odd placed to Gould's credit on the books of the Merchants Bank as a payment pursuant to the resolutions, we must also take into consideration that Gould used over $206,000 of that amount to pay off the indebtedness of the Merchants Bank on the Hibbs and Spaid

note and to that extent the Merchants Bank profited by the transaction and left that much less for creditors.

We come to consider the amount of tax for which the Merchants Bank is liable as transferee. The amount assessed against the Dupont Bank as a deficiency arises out of increasing income by $61,000 as profit realized on the sale of the bank building and from the disallowance of claimed depreciation on bonds.

The testimony as to the bank building shows that it was carried on the books of the Dupont Bank at either $100,000 or $110,000 and was increased on the books of the Merchants Bank, with the approval of the Treasury Department, by $50,000. This increase, with adjustment for depreciation, is said by the respondent to represent taxable gain to the Dupont Bank. As pointed out in the discussion on the transferee liability, the evidence shows that there was no actual sale of assets by the Dupont Bank to the Merchants Bank, but the assets were transferred in liquidation of the Dupont Bank stock. Such being the case, the Dupont Bank realized no gain when it transferred its bank building.

The only explanation we have of the other item giving rise to the deficiency is the statement in the notices to petitioners describing it as " depreciation on market value of securities charged off the books in prior years and claimed as a deduction in the final return." No evidence was offered by petitioners as to this item and we must accordingly affirm so much of the deficiency as is attributable to it.

> *Decision of no deficiency will be entered in the case of Ezra Gould, Docket No. 21727. Decision will be entered under Rule 50 in the case of Merchants Bank & Trust Co., Docket No. 21728.*