THE STOCK YARDS BANK OF CINCINNATI, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41085.   Promulgated March 23, 1932.

*William J. Reilly, Esq.,* for the petitioner.
*Prew Savoy, Esq.,* for the respondent.

## OPINION.

Love: The principal issue in this proceeding is whether any gain or loss was recognizable to petitioner in the transfer of its assets, property and good will to the Trust Company.

The respondent relies upon the contract of sale between petitioner and the Trust Company, which was approved by both the stockholders and directors of each contracting party.

Petitioner contends that the manner in which the stock was purchased from its old stockholders and the subsequent transfer of its assets, property and good will to the Trust Company amounted to a "reorganization" as that term is defined in section 203 (h) of the Revenue Act of 1926, and being a reorganization, section 203 (b) (2), (3) and (4) of the same act, as interpreted by article 1574 of Regulations 69, specifically prohibited the recognition to petitioner of either gain or loss on the said transfer of its assets, property and good will.

We agree with the result contended for by petitioner, namely, that no gain or loss should be recognized on the transfer in question, but for entirely different reasons from those given by petitioner.

As we analyze the record, the respondent has laid too much emphasis on section 710–140 of the General Code of Ohio, which provides in part that "No purchase or investment shall be made in the stock" of any other bank doing business in Ohio. For instance, in the statement attached to the deficiency notice the respondent says:

Your contention that no profit was realized by you upon the sale of your assets is denied. It is held that a profit was realized by you since under the laws of the State of Ohio, it was necessary for the purchasing corporation to purchase your assets, which it did through trustees.

And in his brief, after quoting from section 710–140, *supra*, the respondent continues as follows:

Petitioner seeks to limit this specific language to investments only and contends that the Bank could have purchased all of the stock of the Bank. No authority for such an interpretation of the statute has been cited and this interpretation seems clearly contrary to the specific language of the statute.

Williams' testimony to the effect that Shinkle was named as the nominee of the Trust Company to purchase the stock of petitioner for the Trust Company was in part as follows:

A Well, the matter was brought up as to how to handle it. We realized the bank could not own shares in the bank, so Mr. Shinkle was named as the nominee, and we agreed to lend Mr. Shinkle money to pay for those shares, without interest.

By The Member:
Q Whom do you mean by "we"?
A The Fourth and Central Trust Company, the loan committee, agreed to lend him the money to purchase these shares, and not charge him any interest. So we proceeded to buy them.

\* \* \* \* \* \*

Q Did you tell the Court the nature of the loan made by The Fourth and Central Trust Company to Mr. Shinkle covered by these two notes and his open account, totalling $400,000?
A We made him our nominee, and lent him the money without interest.

\* \* \* \* \* \*

Q Now, tell the Court how the thing was closed as a matter of your own recollection and knowledge?
A Under the agreement Mr. Shinkle said, "here is your stock; I want my notes", and the notes were given him for the stock and for nothing else.

We think the evidence clearly establishes the *fact* that the Trust Company, through its agent or nominee, Shinkle, purchased all of the stock of petitioner. This may or may not have been an *ultra vires* act, but in any event all of the acts referred to in our findings were approved by the Superintendent of Banks of the State of Ohio on February 8, 1926.

What was the effect of the contract entered into between petitioner and its sole stockholder, the Trust Company? True, in form it was clearly a contract of purchase and sale of assets, property and good

will for a stated consideration of $400,000. Plainer language could not have been used to draw up a contract with such an end in view. But in substance the transaction was nothing more than a distribution in complete liquidation of petitioner to its sole stockholder. No consideration of any kind was actually paid to petitioner by the Trust Company for the assets, property and good will so transferred. The latter already owned petitioner's stock and merely took over all of petitioner's assets, etc., with a view of surrendering petitioner's charter, which occurred later in the year. In *Weiss* v. *Stearn*, 265 U. S. 242, the Supreme Court voiced its opinion as to whether form or substance should control, in the following language:

Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form.

Section 201 (c) of the Revenue Act of 1926 provides in part that "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock " and that " The gain or loss to the distributee resulting from such exchange shall be determined under section 202 * * *." We are not concerned here with the gain or loss, if any, to the distributee resulting from such complete liquidation, or with the gain or loss realized to the old stockholders of petitioner upon the sale of their stock to the nominee of the Trust Company. We are only concerned now with the question whether petitioner realized a gain or loss when it distributed its assets, etc., to its sole stockholder in complete liquidation of its affairs. We believe that the respondent has correctly answered this question in article 548 of his Regulations 69, from which we quote:

No gain or loss is realized by a corporation from the mere distribution of its assets in kind upon dissolution, however they may have appreciated or depreciated in value since their acquisition.

Cf. *Virginia Beach Golf Course Annex Corporation*, 23 B. T. A. 1169, *Ezra Gould et al.*, 21 B. T. A. 824.

In view of what we have said above, we do not deem it necessary to discuss further the arguments made by petitioner as to the applicability of section 203 (b) (2), (3), (4) and (h) of the 1926 Act, or the second issue pertaining to the value of the good will and its proper place in the respondent's determination of profit.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*