*Decision will be entered under Rule 50.*

LEON G. GRIEB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79501.    Filed April 26, 1961.

*John D. Cahill, Esq.*, and *Lawrence J. Binder, Esq.*, for the petitioner.

*James T. Wilkes, Jr., Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined a fiduciary liability against petitioner under section 311(a)(2) of the 1939 Code resulting from the distribution to him of the assets of Victory Builders, Inc., upon its liquidation, and the subsequent payment of some of its debts without first satisfying a liability of that company for unpaid income taxes of $560.37 for the year 1949. Respondent has also determined against petitioner an addition to tax in the amount of $61.88 under section 293(a), I.R.C. 1939, and $177.75 for interest which was also determined against the company.

Petitioner, having failed to contest the propriety of the determination of the tax liability against Victory, either in pleading or on brief, has apparently conceded the corporate liability. The significant question for our determination is whether petitioner is liable as a fiduciary of the company for its tax liability, any transferee liability being barred by limitations.

### FINDINGS OF FACT.

Some of the facts are stipulated and are found accordingly.

Petitioner, Leon G. Grieb, prior to 1943 had been engaged in business as a general contractor in an individual capacity in Milwaukee, Wisconsin. In 1943 he established Victory Builders, Inc., a Wisconsin corporation (hereinafter referred to as the company) through which he carried on his business. At all times pertinent hereto, petitioner owned all of the outstanding stock of the company, with the exception of 2 qualifying shares, and was its president and one of its directors. Although all of petitioner's business was handled through the corporate structure, most of the contracts were drawn up designating petitioner personally without mentioning the company. Petitioner did not make an effort to convey to the people with whom he transacted business that it was a corporation they were dealing with as distinguished from him personally.

For the year 1949, the company filed its income tax return with the then collector of internal revenue, Milwaukee, Wisconsin.

On January 2, 1953, respondent determined against the company additional income taxes for the year 1949, additions to tax, and interest in the amount of $1,477.32. During the same month the

company's assets were transferred to a new sole proprietorship formed by petitioner.

On the morning of January 29, 1953, there was an actual cash balance in the company checking account in the amount of $6,918.41. The source of this amount can be traced as follows:

| | |
|---|---:|
| Balance as of Jan. 29, 1953 | $627.27 |
| Jan. 21, 1953 Advance on "Grieb-Hacker job" | 2,239.54 |
| Jan. 27, 1953 Advance on Grieb-Hacker job | 61.47 |
| Payment on "Freeman job" | 534.39 |
| Jan. 28, 1953 Advance on "Boettcher job" | 3,455.74 |
| Balance as of Jan. 29, 1953 | 6,918.41 |

A total of $531.07 of company checks cleared the bank that day leaving a balance of $6,387.34. Although there were still many company checks outstanding, petitioner that day withdrew the amount of $6,377.34 (leaving a balance in the company account of $10) and deposited that sum, with another check for $255, in a new checking account with the same bank entitled "Leon G. Grieb, Builder." Petitioner arranged with the bank to have outstanding checks of the company charged to this new account as they were presented to the bank for payment.

During the period from January 29, 1953, to February 24, 1953, the following checks issued by the company for business expenses were charged to the account of Leon G. Grieb, Builder.

| | |
|---|---:|
| Motor Vehicle Dept | $25.00 |
| Joseph M. Roblee & Co | 54.45 |
| Lorin Frefenthaler | 28.47 |
| Audrey J. Grieb | 6.50 |
| Builders Hardware, Inc | 228.41 |
| Railroad Express | 24.23 |
| Cash | 25.00 |
| Cash | 10.00 |
| Wisconsin Electric Power Co | .55 |
| Total | 402.61 |

During this same period other charges were made against the Leon G. Grieb account totaling $145.23 in payment of miscellaneous bills of the company such as telephone, electricity, attorney fees, office rent due for January, etc. There is no evidence as to whether these checks were written by the company or by petitioner personally.

Although the company was left without assets, it was never formally dissolved.

At the time of the transfer of assets to petitioner the company was in the process of building two homes. They are referred to as the

"Boettcher job" and the "Hacker-Grieb job." Petitioner continued to work on the jobs in process and to carry on the business of general contractor which had been previously conducted by the company. In connection with these jobs in process, during January and February of 1953, petitioner contracted with subcontractors and materialmen for work on them. The procedure of payment to them was as follows. As the subcontractor presented his bill for payment, petitioner would approach the owner for a certificate for withdrawal on a lending institution equivalent to the demand of the subcontractor. After receiving this certificate, petitioner would call in the subcontractor involved, obtain a waiver of lien covering the specific amount of work up to that time, give him a check for such amount, and then proceed to the lending institution to withdraw the advance. Prior to January 29, 1953, all such advances were credited to the company's advance billing account.

During the period from January 29, 1953, to February 24, 1953, petitioner issued checks totaling $4,003.78 against the Leon G. Grieb, Builder, account in payment to the contractors and materialmen who had performed services and/or furnished materials in connection with the Boettcher job. Included in the amount of $4,003.78 was the sum of $1,170 paid to the Wisconsin Furnace Company by check dated February 5, 1953. The invoice for that amount represented work completed on the Boettcher job on or before November 11, 1952, on which date the invoice was issued. The payment to the furnace company was delayed pending receipt of an advance from the owner (Boettcher) on January 28, 1953.

The balance sheet of the company as of December 31, 1952, is as follows:

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash | $1,227.73 | Accounts payable | $4,257.62 |
| Note receivable | 1,200.00 | Bonds, notes, mortgage payable | 2,300.00 |
| Supplies on hand | 1,410.39 | Payroll taxes | 359.19 |
| Prepaid taxes | 20.03 | Due officers | 3,000.00 |
| Fixed assets (net) | 1,524.62 | Advance billing | [1]34,666.32 |
| Contracts receivable | 698.35 | State and Federal income tax | 128.58 |
| Stock subscription | 4,800.00 | Capital stock | 6,000.00 |
| Jobs in process | [1]34,941.35 | Earned surplus | 8,481.98 |
| Due from officers | 13,371.22 | | |
| | $59,193.69 | | $59,193.69 |

[1] These are offsetting accounts. The jobs in process account represents amounts paid for workmen and supplies, while the advance billing account represents amounts received for those expenses from the owner.

Petitioner stated the company's assets and liabilities as of January 31, 1953, for the Internal Revenue Service as follows:

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Unissued capital stock | $4,800.00 | Capital stock | $6,000.00 |
| Due from officers | 9,681.98 | Surplus | 8,481.98 |
| Total | $14,481.98 | | $14,481.98 |

The assets were listed as not possessing any fair market value or forced sale value.

On January 31, 1953, petitioner owned real estate free of encumbrances in the amount of $30,000.

In the year 1955 payments totaling $618.54 were made by petitioner toward the tax determined against the company leaving a balance due in the amount of $800.

On December 30, 1958, a notice of deficiency was mailed to petitioner charging him, as fiduciary of the company, with personal liability for the $800 balance owing by the company.

OPINION.

Pursuant to the provisions of section 311(a)(2) of the Internal Revenue Code of 1939,[1] which provides for enforcement of Government priority and fiduciary liability imposed under sections 3466 and 3467 of the Revised Statutes,[2] the respondent has determined that

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

(2) FIDUCIARIES.—The liability of a fiduciary under section 3467 of the Revised Statutes, as amended, (U.S.C. Title 31, § 192) in respect of the payment of any such tax from the estate of the taxpayer. * * *

[2] Section 191, 31 U.S.C. (Rev. Stat., sec. 3466), provides, in part (p. 128):

Sec. 191. Priority established.

Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; * * *

Section 192, 31 U.S.C. (Rev. Stat., sec. 3467, as amended), provides (p. 172):

Sec. 192. Liability of fiduciaries.

Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

(Section 3467 is to be construed as in *pari materia* with the priority provision of section 3466. *Bramwell* v. *U.S. Fidelity & Guaranty Co.*, 269 U.S. 483 (1926).)

petitioner was a fiduciary of the company and, as such, is liable for the unpaid balance of the deficiency in income tax determined against the company for the year 1949, additions to tax, and interest.

Section 311 of the 1939 Code provides for two separate liabilities, one against a transferee, and another against a fiduciary. A transferee is defined in section 311(f) as an "heir, legatee, devisee, and distributee." The regulation under this section also includes the shareholder of a dissolved corporation, the assignee or donee of an insolvent person, and the successor of a corporation. Sec. 39.311–1(b), Regs. 118. A transferee may be liable to the full amount which he received from the debtor irrespective of any payments of debts he made on behalf of the debtor transferor. It is a defense, however, if any of the debts so paid, or his own debt, had priority over that of the Government. *Estate of L. E. McKnight*, 8 T.C. 871, 873 (1947); *C. A. Hutton*, 21 B.T.A. 101, 103 (1930), affd. 59 F. 2d 66 (C.A. 9, 1932).

Transferee liability covers the situation where one takes complete title to property from an insolvent debtor without full, fair, and adequate consideration to the prejudice of the rights of the creditors of the transferor. *Phillips* v. *Commissioner*, 283 U.S. 589 (1939). The transfer is void against existing creditors. *Wabash, St. Louis & Pacific Railway Co.* v. *Ham*, 114 U.S. 587, 594 (1885). The rights and priorities of the Government, however, as any other creditor, against the transferee is determined under State law. The rationale for this liability is that a transferee, not having priority over the Government, holds the property in trust for the Government. *Commissioner* v. *Stern*, 357 U.S. 39 (1958).

A fiduciary, on the other hand, is defined in the Code as "a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person." Sec. 3797(a)(6), I.R.C. 1939. Unlike a transferee, a fiduciary can be liable under the provisions of Revised Statutes, section 3467, *supra*, only to the extent of debts he pays on behalf of the debtor which do not have priority over the Government. Thus, when a fiduciary retains assets for himself absolutely or distributes them to persons not creditors of the transferor, although he may be subject to transferee liability, he is not subject to fiduciary liability within the meaning of section 3467. See *Edward G. Leuthesser*, 18 T.C. 1112, 1127 (1952).

The basis of fiduciary liability in the Code rests solely upon the provisions of sections 3466 and 3467 of the Revised Statutes. It is not a liability attaching to one receiving funds without fair consideration which is based upon any equitable principles of constructive

trust, but rather a liability to enforce the prior claim of the Government to the fund he so received over general creditors of the debtor.

Fiduciary liability has been summarized in *Bush* v. *United States*, 14 F. 321, 323 (D. Ore. 1882), as follows:

The latter [sec. 3467] is only applicable to cases where the debtor's estate, either by his death, legal bankruptcy, or insolvency, has passed into the hands of an administrator or assignee for the benefit of his creditors, or where the debtor himself has voluntarily made such disposition of it. It does not apply, then, to a conveyance, assignment, or transfer, by whatever means accomplished, to a real or pretended creditor or creditors in payment or satisfaction of a debt or claim. There must be in some way an assignment of the debtor's property to a third person for distribution among his creditors before the statute can be invoked, and then it operates directly upon the assignee by requiring him to pay the claim of the United States first, and making him personally liable therefor if he does not. * * *

The payments made by the fiduciary to creditors not having priority over the Government are not avoided or set aside. *Conard* v. *Atlantic Insurance Co.*, 26 U.S. 386, 438 (1828). Unlike the transferee's liability, which is limited to the value of the property which he has unjustly received, the fiduciary may be liable to the full extent of debts he paid for the transferor, irrespective of any benefit, and notwithstanding that he has received none. See *G. P. Fitzgerald*, 4 T.C. 494, 504 (1944).

A case illustrating the fine distinction between a fiduciary and a transferee within the meaning of the Code is *Bell* v. *Commissioner*, 82 F. 2d 499 (C.A. 3, 1936), affirming a Memorandum Opinion of this Court. In that case the executors under a will were also the legatees. It was held that initially, while they held the assets as executors, they could have been liable as fiduciaries, but upon the court order transferring the assets to them under the will, they became transferees, and thus subject to a different liability for the tax owing by the estate.

In another case, *Jessie Smith, Executrix*, 24 B.T.A. 807 (1931), a wife, upon the death of her husband, received assets as an executrix of her husband's estate and some real estate directly, which was formerly held jointly with her husband. It was held that as to the assets she received as an executrix she would be subject to fiduciary liability if she paid debts of the estate with them before the debt to the Government. But as to the real estate, she was held to be a transferee since she received it absolutely, and thus subject to different liability if said property was burdened with an equitable trust for the payment of taxes.

From the above analysis it is clear that transferee and fiduciary liability attaches to persons holding different interests in property for different purposes, and imposes different standards of liability. While

we have seen that one person may hold the same property in both capacities at different times, and one person may hold different properties in both capacities at the same time, from the very nature of the two capacities, one person may not hold the same property in both capacities at the same time.

It has long been established that stockholders receiving the assets of a corporation upon liquidation are liable to the Government for unpaid taxes of the corporation under the broader transferee liability section of the Code, since it is presumed that they received them absolutely for their own benefit. *Updike* v. *Commissioner*, 8 F. 2d 913 (C.A. 8, 1925), certiorari denied 271 U.S. 661; *Crocker* v. *Commissioner*, 84 F. 2d 64 (C.A. 7, 1936), affirming a Memorandum Opinion of this Court; *Henry A. Kuckenberg*, 35 T.C. 473 (1960). This liability is imposed even in situations when a stockholder in fact subsequently distributes all of the proceeds to liquidate corporate debts. See *C. A. Hutton, supra.* We find no authority for the view that a stockholder, receiving the assets of his liquidated corporation, is liable as a fiduciary rather than a transferee.

In the case of *Mrs. J. F. Alexander, Executrix*, 27 B.T.A. 1210 (1933), a principal stockholder received most of the corporate assets upon dissolution at a time when the corporation was liable for income taxes. He contended that he was a trustee for the corporation rather than a transferee, thus subjecting him to different liability. Holding that he was a transferee, we said (p. 1214):

Where a corporation dissolves and turns over its capital assets to a stockholder or stockholders without paying the taxes due to the Government, such stockholder receiving those assets is a *transferee*. If the fact is that Trout [petitioner] was a director and that the assets were turned over to him as director and trustee, under the laws of South Carolina, the record does not disclose it. In any event, upon a showing that a stockholder or stockholders have received assets of a corporation and that the taxes due the Government have not been paid, the burden of going forward shifts to the petitioner to show that he received them in some capacity other than as a stockholder and that he did not receive them by virtue of his stock ownership. [Emphasis added.]

Petitioner, as sole stockholder, received all of the assets of the company at a time when it was liable for income taxes. These facts would indicate liability as a transferee rather than as a fiduciary. The respondent, conceding that the burden lies with him to go forward with the evidence in this respect, maintains that petitioner took the assets of the company under an express trust for the benefit of creditors. If such a trust was, in fact, created, petitioner would be a fiduciary under the Code.

The sole basis for this contention stems from a conversation between petitioner and an agent for the Internal Revenue Service which

occurred a few years after the corporate liquidation. Concerning this conversation, the agent testified that he was "quite sure" that petitioner told him that the assets he received from the company were "trust funds." Assuming that petitioner, in fact, made this statement, we still cannot attach any significance to a statement of a legal conclusion made by a layman.

Under the applicable Wisconsin Statute,[3] advances made by customers to pay subcontractors and materialmen are made "trust funds" for the benefit of such subcontractors and materialmen. This trust fund could not inure to the benefit of other creditors or to the Government, but only to the benefit of certain subcontractors and materialmen. This is not the type of trust envisioned under the fiduciary liability section of the Code. To comply with that section all of the assets of the corporation must be transferred for distribution to all creditors. *Bush* v. *United States, supra.*

Respondent has offered no evidence of an express trust created over all of the assets of the company. On the basis of what we have before us, we are unable to find as a fact that any such express trust was ever created between petitioner and the company.

We next must see whether petitioner is included under section 311(a)(2) in a capacity other than an express trustee. From the definition of "fiduciary" we must eliminate, as not applying to petitioner, a guardian, trustee, executor, administrator, receiver, or conservator. The only remaining position is "any person acting in any fiduciary capacity for any person."

The word "fiduciary" used in the Internal Revenue Code is not mentioned in the Revised Statutes. It is, however, descriptive of the types of persons intended to be covered under the statute. The statute provides that the person covered is executor, administrator, assignee, or other person who pays a debt due by the person "for whom or for which he acts."

The mere payment of a debt for another person will not automatically cause one to be included under this section. The crucial test, therefore, looking at both the Internal Revenue Code and the Revised

---

[3] Sec. 289.02 (4) of the Wisconsin Statutes (1953) provides:

Sec. 289.02 (4). EMBEZZLEMENT BY CONTRACTORS. The proceeds of any mortgage on land, paid to any principal contractor or any subcontractor for improvements upon the mortgaged premises and all moneys paid to him by any owner for improvements, constitute a *trust fund* in the hands of any such contractor or subcontractor to the amount of all claims due and to become due or owing from such contractor or subcontractor for lienable labor and materials until all such claims shall have been paid; and the use of any of such moneys by any contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute, shall have been paid in full, or pro rata in cases of a deficiency, is embezzlement of moneys so misappropriated. [Emphasis added.]

Statutes, is whether the payment of the debts were made by one who is acting for the debtor in a fiduciary or representative capacity. *United States* v. *Stephens*, 208 F. 2d 105, 108 (C.A. 5, 1953).

Petitioner can only be liable as a fiduciary if he, in fact, received the assets from the company as an officer or director for the purpose of liquidating the corporate debts rather than as a stockholder, and that he paid these debts in his capacity as a representative of the company.

In the absence of any written agreement, we look to the actions of petitioner toward the corporate assets in determining the course he was pursuing. Did petitioner in fact treat the assets as a director, having no interest in the assets until after all of the corporate debts were liquidated, or did he receive them as a stockholder to distribute according to his own discretion? A review of the entire record indicates that the latter situation was pursued.

Petitioner was not liquidating the contracting business. The net effect of the transaction was merely to eliminate the corporation and to transfer the entire business to himself personally. Assets and liabilities were turned over to the new sole proprietorship. Many of the corporate debts had to be paid under the embezzlement provision of Wisconsin law. Other debts were paid since it was necessary in order to remain in business. Petitioner had always dealt with his creditors on an individual basis, and many of the contracts were signed in his individual capacity. Creditors were not even aware of the corporate setup. Many of these debts would have, therefore, been paid to liquidate personal liability. His intention was to pay these debts as a debtor rather than as any representative or fiduciary of the company.

We have no evidence that petitioner was acting on behalf of the corporation. The mere payment of debts or, indeed, even the promise to pay another's debts, is insufficient to create a fiduciary relationship. *C. A. Hutton*, 21 B.T.A. 101 (1930), affd. 59 F. 2d 66 (C.A. 9, 1932). As long as the assets which were used to pay the debts were transferred without an actual trust attached to them, or for the express purpose of paying all company creditors, the recipient is still a transferee rather than a fiduciary. See *Shepard* v. *Commissioner*, 101 F. 2d 595 (C.A. 7, 1939), affirming 36 B.T.A. 268 (1937), certiorari denied 307 U.S. 639.

A stockholder receiving all of the assets of a corporation is one of the clearest cases of one receiving assets in his own behalf, and he will be presumed to be acting on his own behalf as a transferee unless there is a clear showing to the contrary. In the absence of such proof, we cannot find that petitioner was acting as a fiduciary upon receipt and distribution of the corporate assets.

Under Wisconsin Statutes [4] when a corporation distributes its assets without first satisfying its creditors, the directors and stockholders may be liable only to the corporation. There is no provision for direct liability on their part to creditors thus defrauded, nor is there any trust created for creditors upon these assets. Respondent, nevertheless, relies on two Wisconsin cases which hold that, upon insolvency of a corporation, the assets become, by equitable conversion, a trust fund for the benefit of creditors. Therefore, respondent concludes that petitioner, as an equitable trustee under Wisconsin law, is a fiduciary within the meaning of the Code. Respondent contends, then, that all persons who hold property impressed with an equitable trust are liable as fiduciaries. This contention has been rejected by this Court in *Bond, Incorporated*, 12 B.T.A. 339, 341 (1928), where we said (p. 341):

But if we should assume that liability did exist under that [trust fund] doctrine, we would still be of the opinion that petitioner does not fall within the provisions of section 281 which relates to fiduciaries. The Act itself, in section 200(b), defines a fiduciary in such manner as to make it clear that it refers to one *acting in a representative capacity; a true fiduciary and not merely the holder of property which may, under certain circumstances, be impressed with a trust.* * * * [Emphasis supplied.]

The sole basis for transferee liability is that the recipient of the funds is, under certain circumstances, deemed to hold them in con-

---

[4] Sec. 180.40 of the Wisconsin Statutes (1953) provides (p. 2304):
180.40 **Liability of directors and shareholders.** (1) In addition to any other liabilities imposed by law upon directors of a corporation:

\* \* \* \* \*

.(c) Directors of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations and liabilities of the corporation shall be jointly and severally liable to the corporation for the value of such assets which are distributed, to the extent that such debts, obligations \* \* \* and liabilities of the corporation are not thereafter paid, discharged or barred by statute.

\* \* \* \* \*

(5) In addition to any other liabilities imposed by law upon shareholders of a corporation:

\* \* \* \* \*

.(b) Any shareholder receiving any dividend or distribution of the assets of the corporation which dividend is paid or distribution is made contrary to the provisions of this chapter or contrary to any restrictions contained in the articles of incorporation shall be liable to the corporation for the amount received by said shareholder which is paid or distributed in excess of the amount which could have been paid or distributed without a violation of the provisions of this chapter or any restrictions in the articles of incorporation.

\* \* \* \* \*

The note of the Revision Committee, under section 180.40 of the Wisconsin Statutes states, in part (p. 2305):
\* \* \* 180.40(1) establishes more definite standards to measure and limit directors' liability than 182.19 (1) and (5) (1949) and the theory is that a director's liability is a liability to the corporation rather than to stockholders or creditors.

\* \* \* \* \*

\* \* \* 180.40(55) is similar to 182.19(1) (1949) in imposing liability to the corporation on shareholders who receive improper dividends or distributions.

structive trust for certain creditors. See *Henry A. Kuckenberg*, *supra*. If everyone who is held to hold funds in trust for another is deemed to be a fiduciary under the Code, as respondent contends, it would completely eliminate the basis for the distinction between the two liabilities. Respondent has failed to recognize that in order to be a fiduciary, petitioner must have, in fact, *acted* as such, rather than on his own behalf.

The existence of an *actual* fiduciary relationship is indispensable in placing one within the provisions of fiduciary liability. This fiduciary capacity must be established from the very nature of the transaction rather than through the equitable "trust fund" doctrine. This distinction was well illustrated in the case of *Jessie Smith, Executrix*, *supra*. In this case a wife, upon the death of her husband, received the assets of her husband's estate as executrix, and she received complete title to real estate which was held jointly by her husband and herself. It was held that since the real estate was not a part of the estate she did not receive it as executrix and, therefore, she did not hold it in a fiduciary capacity. Section 3467 was held to relate only to the payment of debts out of the funds or assets *coming into her hands as executrix* and not to the real estate. It was added that if it were found that the real estate was burdened with the tax liability of the decedent, under the *trust fund* doctrine, she would be liable as a transferee of the real estate, albeit not as a fiduciary.

The mere finding of a "trust fund," then, is insufficient to deem the holder a fiduciary under the statute. If a trust is created out of the nature of the transfer, such as the transfer of assets for the benefit of another, then the holder is a fiduciary. On the other hand, if a trust arises because the person receiving the assets was not rightfully entitled to them, he is a transferee. In the latter situation, the debtor has divested himself completely of the assets to another and this transfer, if prejudicial to other creditors, can be avoided. In the former situation, on the other hand, the debtor by placing his assets with a representative has not divested himself completely of the assets to defraud creditors, inasmuch as his creditors have a beneficial interest in them pursuant to the very nature of the assignment. The transfer to a fiduciary cannot be avoided, and liability attaches to the fiduciary only if he fails to recognize legal priorities in discharging his obligation under the trust.

The distinction between the two different types of trusts was also recognized in *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U.S. 371, 378 (1893), where it was said (p. 383) :

Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in

a condition of trust, first, for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder.

An analogous situation to the one before us concerns a provision in the Bankruptcy Act which exempts persons "acting in any fiduciary capacity." The issue arose as to whether one placed in a fiduciary capacity by operation of equity was included under this section. It was held that to include such equitable trustees would nullify the provision, since almost all insolvent debtors were also equitable trustees. The term was held to include only trusts actually created in law, rather than implied or constructive trusts. *Neal* v. *Clark*, 95 U.S. 704, 708 (1877).

The above reasoning also applies to our situation. The sole basis for transferee liability is that a trust is created in equity for the benefit of creditors. Wherein would lie the distinction if we were to hold that such equitable trustees were fiduciaries rather than transferees? This would completely nullify the difference between the two liabilities, and, indeed, eliminate transferee liability.

Respondent also claims that petitioner was a fiduciary within the definition of a fiduciary in the Uniform Fiduciaries' Act which has been adopted by the State of Wisconsin. This act includes in its definition of a fiduciary an agent and an officer of a corporation. While we agree that petitioner was an agent and an officer of a corporation, and, therefore, may have been a fiduciary within the meaning of that act, such a determination is not determinative of fuduciary liability under the Code. It is not enough merely to find whether one is a fiduciary and then automatically apply fiduciary liability. The determining factor is still whether the assets were *received* in that capacity rather than in another capacity. *Jessie Smith, Executrix, supra.* There has been no showing that petitioner actually received the assets of the corporation in any capacity other than as a stockholder. A stockholder is not a fiduciary and is deemed to have received the assets absolutely for his own benefit.

Finally, respondent relies upon our decision in *L. T. McCourt*, 15 T.C. 735 (1950), as holding that all persons who receive the assets of a liquidated corporation are subject to fiduciary liability for failure to pay corporate taxes. This case, however, is not to be read as justifying such a conclusion. In *McCourt*, the alleged fiduciary was an administrator of the estate of the principal stockholder, and was an officer and director of the company. He was not a stockholder. He liquidated the corporation for the estate and used the cash realized there-

from in part to pay administration expenses of the estate and creditors of the corporation, distributing the remaining cash to the widow at a time the company was indebted to the United States for unpaid taxes. His obligation was to distribute the assets to the rightful parties. He was in fact representing the company as a director and never received the complete title to the property in his own right. Such persons are clearly not transferees; *Ezra Gould*, 21 B.T.A. 824 (1930); *Kizzie Gordon*, 27 B.T.A. 377 (1932), but are the type of persons intended to be covered under the fiduciary liability. The transfer to *McCourt* was not voidable or fraudulent. He was personally liable only because he failed to give the Government priority in the distribution. Petitioner in the instant case, however, took the assets absolutely, and therefore contrary to the rights of all creditors. This act in itself is voidable regardless of his further actions.

One of the main objectives of the provisions for transferee liability in the Code is to provide an effective remedy for such a situation as that presented in the instant case. To accept respondent's contention that such persons are fiduciaries rather than transferees would create the anomalous result of providing a statutory remedy only to the extent of the corporate debts they pay with the corporate assets but providing no statutory remedy for recovery of the assets they retain for themselves.

Respondent has failed to show any evidence that petitioner ever received the assets impressed with an express trust or that he received them as a representative or an agent for the corporation. This cannot be presumed from the transfer of assets and the subsequent payment of corporate debts or by the operation of equity.

We have not closed our eyes to the obvious fact that the company was liquidated with the full knowledge on the part of petitioner of the pending tax liability, but this is clearly one of the situations sought to be remedied by proceeding on the basis of transferee liability.

The statute of limitations has obviously barred transferee liability (sec. 311(b)(1)) which appears to be the reason why respondent relies solely on a claim of fiduciary liability because, if his contention were well grounded, he would get the benefit of a longer period of limitations. Since we have held that the provisions of section 311(a)(2) relating to fiduciary liability do not apply upon the record before us, we must hold for petitioner.[5]

*Decision will be entered for the petitioner.*

---

[5] In holding that petitioner is not liable in this proceeding as a fiduciary, we do not mean to suggest that if he is still indebted to the company, and such indebtedness may be treated as an asset of the company, the Government may not have a means of reaching such assets in an appropriate proceeding in another tribunal brought to collect the assessment that was made against the company.