Michael V. Lawless and Lee Lawless, et al. [1] v. Commissioner. Lawless v. Commissioner
Docket Nos. 92017, 1455-64, 94364-94366. 2.
United States Tax Court
T.C. Memo 1966-12; 1966 Tax Ct. Memo LEXIS 270; 25 T.C.M. (CCH) 49; T.C.M. (RIA) 66012; January 14, 1966
*270 James L. DeSouza, 508 Lukes Tower, Phoenix, Ariz., for the petitioners. David R. Brennan and Eugene H. Ciranni, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in income tax and additions to tax as follows: Additions to Tax
Income
I.R.C. of 1939
Docket
Tax § 294(d) § 294
No.
Petitioner
Year
Deficiency
(1)(A)
(d)(2)
92017
Michael V. Lawless and Lee Lawless
1951
$ 666.94
1952
$16,555.46
$1,390.92
1953
10,129.36
1,221.34
784.22
1954
12,750.66
1,248.20
1956
16,443.47
Income
Additions to Tax
Docket
Tax
I.R.C. of 1954
No.
Petitioner
Year
Deficiency § 6651(a)
1455-64
Michael V. Lawless and Lee Lawless
1957
$12,341.78 *
$30,585.44
1958
52,428.78
0
1959
37,360.97
5,604.15
1960
1,817.84
0
1961
18,285.61
0
Fiscal Year
Ended 6/30
94366
Arthur Murray School of Dancing of
1952
$ 1,275.34
Arizona, Inc., a corporation (dissolved)
1954
2,924.65
1955
21,572.33 Respondent also determined that Lee Lawless and Michael V. Lawless were liable as transferees of the Arthur Murray School of Dancing of Arizona, Inc. as follows: Docket No.
Petitioner
Transferee liability
94364
Lee Lawless as Transferee of Arthur Murray School of Dancing of
Arizona, Inc., a corporation (dissolved)
$25,772.32
94365
Michael V. Lawless as Transferee of Arthur Murray School of
Dancing of Arizona, Inc., a corporation (dissolved)
25,772.32
By *271 amendment to his answer in Docket No. 94366, respondent claimed an additional deficiency in the income tax of the Arthur Murray School of Dancing of Arizona, Inc. for its fiscal year ended June 30, 1955 (the fiscal year of the corporation's liquidation), and by a corresponding amendment to his answer in Docket No. 94364 (Lee Lawless, Transferee) and Docket No. 94365 (Michael V. Lawless, Transferee) respondent claimed that petitioners in those dockets were liable as transferees for the additional deficiencies claimed against the Arthur Murray School of Dancing of Arizona, Inc. for its fiscal year ended June 30, 1955. By amendment to his answer in Docket No. 1455-64, respondent claimed increased deficiencies in the income tax of Michael V. and Lee Lawless for the years 1957 through 1961. Respondent has conceded that petitioners Michael V. and Lee Lawless in Docket No. 92017 are not liable for the addition to tax in 1953 under section 294(d)(2) of the Internal Revenue Code of 1939. The issues in these consolidated cases are (1) whether petitioners may amortize the cost of Arthur Murray dancing studio franchises acquired by them; (2) whether petitioners, in connection with prepaid dance *272 instruction contracts, may deduct the estimated future cost of lessons still remaining at the end of the taxable year, or in the alternative, whether the so-called reserves for prepaid lessons still untaught are includable as income in the year when a studio is sold; (3) whether petitioners Michael V. and Lee Lawless are liable as transferees of the Arthur Murray School of Dancing of Arizona, Inc. for the deficiencies of the transferor for its fiscal years ended June 30, 1952, 1954 and 1955; (4) whether petitioners Michael V. and Lee Lawless are entitled to deduct certain losses incurred in the operation of the Arthur Murray Dance Studio in Fort Worth, Texas, in 1961; (5) whether petitioners Michael V. and Lee Lawless are liable for additions to tax in 1957 and 1959 under section 6651(a) of the Internal Revenue Code of 1954 for failure to file timely returns; (6) whether petitioners Michael V. and Lee Lawless are liable for additions to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the years 1951 and 1953 (failure to file timely declaration of estimated tax), for additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 for the years 1952 *273 and 1954 (substantial underestimate of estimated tax), and for selfemployment taxes for several of the years here involved. Findings of Fact Some of the facts were stipulated and they are so found. Michael V. and Lee Lawless, husband and wife, are residents of Phoenix, Arizona. They filed joint Federal income tax returns for the years 1951 through 1961 with the district director of internal revenue, Phoenix, Arizona. They also filed a partnership return of income for the period of March 14, 1952 to December 31, 1952 in connection with Arthur Murray Studios, Houston, Texas. The Arthur Murray School of Dancing of Arizona, Inc., an Arizona corporation formed in October 1951, filed its corporation income tax returns for the taxable years ended June 30, 1952 through 1955 with the district director of internal revenue, Phoenix, Arizona. Arthur Murray, Inc. is a nationally known corporation engaged in the dance instruction business and, as a part of its business, it licenses persons to teach dancing under the name Arthur Murray. Arthur Murray, Inc. imposes no charge and requires no equity investment in Arthur Murray, Inc. or any deposit incident to the initial granting of such licenses. *274 Except as expressly provided by the terms of the franchise, a franchise does not give the licensee the exclusive right in a city to teach dancing lessons under the name of Arthur Murray. In effect and practice, the licensee acquires the right to teach under the name Arthur Murray only at the street address stated in the franchise. Arthur Murray, Inc. does not normally exercise its right to terminate franchise agreements when the licensees comply with the terms of their franchise agreements and when their operations are satisfactory. Franchise agreements are usually terminated because of nonpayment of royalties, complaints from pupils of the studios involved, and substandard operations. During the period from 1946 to 1960 cancellations of franchises by Arthur Murray, Inc. averaged about 2 to 5 percent of the outstanding agreements per year and such cancellations occurred predominantly after the first three years of operation. With one or two exceptions, all of the licensees of Arthur Murray, Inc. are people who have worked up in the organization to acquire the necessary experience and qualifications to become licensees. Arthur Murray, Inc. checks out the references of proposed licensees *275 and it particularly checks with the licensees for whom they have worked before applying for franchises for studios of their own. Generally, the length of the dance courses offered by Arthur Murray studios, by taking the student through a series of plans, could range from five hours to as many as 3,600 lessons. A student normally received from three to six hours of dance instructions per week. In 1946 there were approximately 65 Arthur Murray franchises in existence throughout the United States, and by 1960 the number of franchises in existence increased to a high of approximately 450. During the period 1951 to 1961 the average number of franchises outstanding was approximately 350. On September 1, 1946 the Lawlesses purchased from one Gus Schultz the lease and certain physical assets of an independent dance studio owned and operated by Schultz in Phoenix, Arizona. The total purchase price was $5,850, reduced by certain outstanding obligations and by the cost of giving lessons under existing agreements made by the seller. The Lawlesses acquired from Arthur Murray, Inc. a franchise dated September 13, 1946 permitting the operation of the studio in Phoenix as an Arthur Murray dance studio *276 under the terms of the franchise, which required the Lawlesses to make weekly payments to the licensor of 10 percent of the gross receipts. The original term of the franchise was through August 1947 and was thereafter to be "automatically renewed" each year for a further period of one year unless either party notified the other in writing of its intention not to renew. The franchise provided that the licensor could exercise some control over the qualifications of the instructors, interviewers, supervisors and other employees of the licensee. The licensee also agreed to obtain the licensor's written approval of the location, layout and decoration of any school or studio operated by the licensee. On September 1, 1948 a new franchise was executed with respect to the Phoenix studio. In May 1947 the Lawlesses acquired from Arthur Murray, Inc. a franchise for the operation of a dance studio in Tucson, Arizona. A new franchise was executed with respect to Tucson in June 1953. The term of the franchises was automatically renewable for one year periods, subject to written notice of intent not to renew by either party. When the Arthur Murray School of Dancing of Arizona, Inc. was formed in October *277 1951 for the purpose of succeeding to the business then conducted by the Lawlesses, the assets of the Phoenix and Tucson studios, except the franchises, were transferred to the corporation by the Lawlesses in exchange for stock. The Lawlesses then licensed the corporation to operate under their retained Arthur Murray franchises. On or about June 30, 1955 the corporation was dissolved and its assets were distributed to the Lawlesses who assumed its liabilities and resumed the operation of the Phoenix and Tucson schools. On March 1, 1952 the Lawlesses purchased from Louis A. Mazza and Curtis R. Andrews the Arthur Murray Dance Studio at Houston, Texas, for the amount of $80,000 plus certain assumed liabilities. At that time the licensee Louis Mazza was operating the Houston studio under an exclusive 10-year franchise from Arthur Murray, Inc. dated June 27, 1946. The Houston studio has been in existence in that city since 1939. On March 17, 1952 the Lawlesses acquired a new nonexclusive franchise from Arthur Murray, Inc. for Houston covering approximately the remainder of the original 10-year period. Thereafter the franchise was automatically renewable each year, subject to the customary *278 provision of written notice by either party of its intention not to renew.the March 1, 1952 agreement under which the Lawlesses purchased the Houston studio contained a provision that Mazza and Andrews would not operate a dance studio in Houston or otherwise compete with the Lawlesses in Harris County, Texas, for a period of five years. By an agreement dated June 30, 1955 and effective July 3, 1955 the Lawlesses purchased from Robert W. and Ethlyn Covington for the amount of $500,000, payable partly in cash and the balance in installments, the following Arthur Murray, Inc. franchises for the operation of dance studios: Dallas, Texas, dated April 4, 1947, as amended; Forth Worth, Texas, dated April 4, 1947, as amended; Lubbock, Texas, dated June 29, 1953; Wichita Falls, Texas, dated June 29, 1953; San Angelo, Texas, dated June 29, 1953; and the stock in a Mexican corporation operating the Arthur Murray studio in Mexico City under a franchise dated March 27, 1953. In addition to the franchises, the agreement included other assets among which were (1) furniture and fixtures, equipment and leasehold improvements, (2) all contracts with students for dancing lessons and (3) all employment *279 contracts with employees of the studios. The San Angelo studio was closed in about 1958 by mutual agreement between the Lawlesses and Arthur Murray, Inc. The stock in the Mexican corporation was sold by the Lawlesses at a loss in 1958. The Dallas studio had been in existence since 1940, the Fort Worth studio since 1941, the Lubbock, Wichita Falls and San Angelo studios since 1953. Under the June 30, 1955 sales agreement the sellers, Robert W. and Ethlyn Covington, agreed not to operate a dance studio for a period of 10 years in any place in the United States except under a franchise from Arthur Murray, Inc. The Dallas and Fort Worth franchises acquired by the Lawlesses under the above sales agreement were 10-year franchises, while the Lubbock, Wichita Falls and San Angelo franchises were one-year franchises. All the franchises were automatically renewable for one-year periods subject to the written notice by either party of its intention not to renew. By an agreement dated July 16, 1956, but effective as of April 1, 1956, the Lawlesses and Daniel H. Kirk formed a partnership, with Kirk acquiring a one-third interest, to operate the dance studio in Houston, Texas, as well as the dance *280 studios in Galveston, Texas; Port Arthur, Texas; and Beaumont, Texas, whose acquisition is described below. Under an agreement dated January 27, 1956 the Lawlesses purchased the Arthur Murray, Inc. franchise and certain other assets of the Arthur Murray dance studio at Galveston, Texas, for the amount of $8,044.53 plus certain obligations. The Galveston studio was transferred to the Lawless-Kirk partnership effective April 1, 1956. The Galveston franchise (dated April 1947) was for a 10-year period, with the usual provisions for automatic renewal for one-year periods. A new franchise for Galveston, with the usual provision for annual renewal, was acquired by the Lawless-Kirk partnership on January 27, 1956 from Arthur Murray, Inc. The Galveston studio had been in existence since 1947. Under an agreement effective April 1, 1956 the Lawless-Kirk partnership purchased the Arthur Murray, Inc. franchises and certain other assets of the Arthur Murray dance studios at Beaumont, Texas and Port Arthur, Texas for the amount of $89,417. The Port Arthur studio was later closed in 1957 by mutual agreement with Arthur Murray, Inc. On July 1, 1956 the Lawless-Kirk partnership unrchased the Arthur *281 Murray, Inc. franchise and certain other assets of the Arthur Murray dance studio at Corpus Christi, Texas for the amount of $60,000. The Lawless-Kirk partnership acquired a franchise dated July 1, 1956 from Arthur Murray, Inc. for the Corpus Christi studio. The franchise was automatically renewable for one-year terms with the provision for nonrenewal upon written notice by either party. The Beaumont and Corpus Christi studios had been in existence since 1948. In May 1956 the Lawlesses purchased the Arthur Murray, Inc. franchise and certain other assets of the Arthur Murray studio at Austin, Texas for the amount of $84,000. On May 21, 1956 the Lawlesses acquired a new franchise from Arthur Murray, Inc., automatically renewable for one-year terms subject to written notice by either party of its intention not to renew. The Austin studio had been in existence since 1947. In 1956 the Lawlesses acquired a franchise from Arthur Murray, Inc. to operate a dance studio in Fort Worth-Ridglea, Texas. The Lawlesses sold the dance studios in Dallas, Fort Worth, Fort Worth-Ridglea, Austin and Lubbock in 1957, the dance studio in Wichita Falls in 1958, and the dance studio in Tucson in 1959. In July *282 1961 the Lawlesses sold their two-thirds interest in the Lawless-Kirk partnership to Daniel H. Kirk and Joseph Anthony Lanza. The partnership was then operating only the dance studio in Houston, Texas. The sales agreement of July 1961 indicated that the dance studios formerly operated by the partnership in Beaumont, Corpus Christi and Galveston had been sold. After the purchase of each dance studio by the Lawlesses and by the partnership, the name of the studio and its location (except as to Houston) remained unchanged. The student contracts acquired by the Lawlesses and by the partnership upon the purchase of each studio were (1) taught out, (2) cancelled with and without refunds, or (3) renewed into new dancing contracts. It was the normal practice, when the Lawlesses purchased a dance studio operating under an Arthur Murray franchise, to also acquire the employment contracts of the studio employees. Each dancing school purchased by the respective petitioners was acquired and maintained as a separate business entity. Each was operated under a separate trade name which was recorded as required by law, separate books and records were kept for each, contracts were separately maintained, *283 and separate royalties were paid to Arthur Murray, Inc. for the franchise based upon the gross income of the individual studios. The franchises generally required that the business be conducted under the name Arthur Murray Dance Studio of (name of city). At all times here relevant the Lawlesses, the Arthur Murray School of Dancing of Arizona, Inc. and the Lawless-Kirk partnership were required under the franchises acquired by them from Arthur Murray, Inc. to maintain trust funds with Arthur Murray, Inc. as trustee. The primary purpose of the fund was to meet the cost of instruction at the designated rate in the event the petitioners should fail to give such instruction to students who had prepaid their tuition. The fund was also used to make refunds of tuition for untaught lessons when necessary. The trust fund was maintained in the form of (1) cash, (2) corporate stock in Arthur Murray, Inc. owned by petitioners, and (3) voting trust certificates owned by the petitioners. The aggregate amount of such trust funds held by Arthur Murray, Inc. as trustee was approximately $200,000 from 1956 through 1961. Similar trust funds were generally required of most Arthur Murray licensees. When *284 a dance school was purchased by the Lawlesses or by the Lawless-Kirk partnership, a portion of the purchase price was allocated to the franchise and a portion allocated to the tangible assets acquired in the purchase. No portion of the purchase price of the school was allocated to goodwill or to any nondepreciable intangibles. The portion of the purchase price allocated to a franchise was then amortized by the straight line method over a period which was generally from the date of purchase to the expiration date stated on the franchise. In some instances a remaining life of 18 months was assigned to a franchise. The cost allocated to the various franchises and the remaining lives assigned to such franchises by the Lawlesses and by the partnership were as follows: Michael V. and Lee Lawless
Remaining
Year Ac-
Cost Allo-
Life -
quired
cated
Months
Houston
1952
$78,889.31
52 1/2
Galveston
1955
6,793.00
18
Dallas - downtown
1955
20,000.00
26
Dallas - Highland
Park
1955
$15,000.00
26
Ft. Worth - down-
town
1955
16,353.43
26
Lubbock
1955
5,000.00
18
San Angelo
1955
5,000.00
18
Wichita Falls
1955
5,000.00
18
Austin
1956
5,362.14
36
Lawless-Kirk partnership
Houston
1956
$12,347.79
Galveston
1956
4,906.05
13 No amorization was claimed in connection *285 with the Port Arthur, Beaumont and Corpus Christi studios. Respondent disallowed the deductions claimed by petitioners in connection with the amortization of the various franchises over the years 1952 through 1957 in the respective amounts of $13,033.91, $16,463.88, $16,463.88, $34,069.55, $55,866.15 and $18,669.89. In the course of the operation of the dance studios the Lawlesses sold to students courses of a designated number of hours of instruction. Under the contracts the students were permitted to receive instruction as they elected. Some of the courses were fully prepaid by the students. As to a great many other courses, where the down payment was followed by periodic installment payments, the petitioners would assign the contracts to a financing institution which would advance to petitioners portions of the remaining contract balance, deduct its own charges for services, set up a reserve for the remaining contract balance and remit such balance to petitioners at a later time. Such subsequent remittances to petitioners were not related to the time when instruction was furnished to the student. During the years 1946 through 1951 the Lawlesses reported their income on Federal income *286 tax returns on the cash receipts and disbursements method of accounting. In 1950 the Commissioner denied the prior request made by the Lawlesses to change their method of reporting income by excluding from annual income the prepaid amounts paid by students for lessons which, at the end of the taxable year, remained to be taught in subsequent years. In 1952 the Lawlesses established a reserve to cover future teaching costs for dancing lessons paid for but untaught at the end of the taxable period. All cash received was reported as gross income in the year received and all actual expenditures were claimed as deductions. But an additional deduction was also claimed to reflect the provision made for prepaid lessons which were still untaught at the end of the taxable year. This provision was based on a designated amount per hour which had been determined by Arthur Murray, Inc. by experience as the actual teaching cost, apart from all general overhead expense and profit, required to teach that specific hour of instruction. Prior to March 1, 1956 the teaching rate used to determine the provision for untaught hours was $2.50 per hour, and after that date the rate used was $3.50 per hour. The *287 corporation (Arthur Murray School of Dancing of Arizona, Inc.) and the Lawless-Kirk partnership kept their books and reported their income in the same manner as the Lawlesses did for 1952 and subsequent years. Respondent disallowed the deductions claimed by petitioners during the years here involved for the provision for teaching costs of dancing lessons which had been prepaid but which remained untaught at the end of the taxable year. Under the sales agreement of August 12, 1957 which covered the sale by the Lawlesses for $250,000 of the franchises and studios at Fort Worth and Fort Worth-Ridglea to Gordon Johnson, the purchaser agreed to make certain initial cash payments with the balance of the purchase price payable in weekly installments based upon a percentage of the weekly gross receipts from the operation of the studios. The Lawlesses obtained a note from the purchaser covering the balance of the sales price secured by a chattel mortgage covering the assets sold. In the event of default by the purchaser, the Lawlesses had the right under the sales agreement to (1) retake possession of the studios and assets, or (2) declare the entire unpaid balance as immediately due and payable *288 and to foreclose on the chattel mortgage. Subsequently, the operation of the two studios was transferred from Gordon Johnson to several other parties in succession until in 1961 the studios were closed and abandoned by one Byron Rider. In 1961 the Lawlesses reopened the Fort Worth studio and operated it for a period of about 14 months. On their joint return filed for 1961 the Lawlesses reported a loss from the operation of the Fort Worth studio in the amount of $13,330.58. Respondent disallowed this loss deduction in full. Opinion The first issue is whether petitioners are entitled to any amortization deductions for the amounts allocated to the Arthur Murray franchises purchased by them. Both section 23(1) of the Internal Revenue Code of 1939 and section 167(a) of the Internal Revenue Code of 1954 allow as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in taxpayer's trade or business or held for the production of income. The regulations under section 167(a) of the Internal Revenue Code of 1954 provide that "[if] an intangible asset is known from experience or other factors to be of use in the business or in the production of income *289 for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance," but "[an] intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation." Section 1.167(a)-3, Income Tax Regs. A similar rule appears in the regulations under section 23(1) of the Internal Revenue Code of 1939. Petitioners argue that the franchises were limited in duration and that the portion of the purchase price allocated to them is amortizable over the remainder of the term actually stated in the franchise. In other words, petitioners seem to ignore the automatic renewal provisions in each of the franchises. Respondent argues, among other contentions put forth, that the franchises are of indefinite duration and therefore are not subject to amortization. It is clear that in determining the useful lives of franchises, leases, licenses and similar contractual arrangements which contain renewal provisions, the probability of future renewals must be considered. See Westinghouse Broadcasting Co., 36 T.C. 912, affd. 309 F. 2d 279. The question is one of fact. There are no facts *290 of record here which would bring this case within the ambit of our holding in Indiana Broadcasting Corp., 41 T.C. 793, reversed (C.A. 7), 350 F. 2d 580, certiorari applied for. Unless otherwise stated, the terms of the Arthur Murray franchises were generally for a period of one year, with the provision that they would be automatically renewed each year for a further period of one year unless either party notified the other in writing, within a designated time, of its intention not to renew. [2] Even in those instances where the franchise was for a stated term longer than one year, the provision for automatic subsequent renewals was still available. The testimony of an executive officer of Arthur Murray, Inc. was that "[for] all practical purposes, Arthur Murray, Inc. * * * considers the franchises automatically renewable each year unless problems are involved in their relationship with any particular licensee or licensees." The record also indicates that Arthur Murray, Inc. did not normally exercise its right to terminate franchise agreements when the licensees complied with their franchise agreements and when their operations were satisfactory. It appears that franchises were usually *291 terminated for cause, for example, nonpayment of royalties, complaints from pupils of the studios involved, and substandard operations. It is also quite evident that Lawless was fully aware of the established policy of Arthur Murray, Inc. with respect to franchises and the possibilities of their renewal. He testified that, at the time of trial, he was a licensee for the Arthur Murray studio in Phoenix and that he had been engaged in business as a licensee of Arthur Murray, Inc. for about 18 1/2 years. He had also been a regional director for Arthur Murray, Inc. for several years. Petitioners introduced evidence to show that Arthur Murray, Inc. exercised its right to terminate franchises in a number of specified instances. There is also evidence in the record that during the period 1946 to 1960 cancellations of franchises by Arthur Murray, Inc. averaged from *292 approximately 2 to 5 percent of the outstanding agreements per year. But we do not see how petitioners are helped by this evidence standing alone. We can agree that cancellations did, in fact, occur over the years. But the burden still remains for petitioners to show with reasonable accuracy, either on the basis of their own experience or upon the basis of the industry's experience, the useful life of the franchises acquired by them. Petitioners must show more than uncertainty as to the length of the useful life of a franchise. See Westinghouse Broadcasting Co., supra.
Petitioner's position that the franchises are amortizable over the remainder of their originally stated terms is clearly untenable under the facts of this record. Certainly petitioners would not have paid, as they did, substantial sums for the acquisition of dance studios and franchises without the reasonable prospect of renewals. We cannot find, on this record, any convincing evidence which indicates either the average useful life of such franchises or their usual life span. In fact, petitioners have made little effort to introduce any evidence in this aspect of the case. We conclude that petitioners have failed to *293 show error in respondent's determination that the franchises acquired by petitioners had an indeterminate useful life, and we hold that petitioners are not entitled to any amortization deductions during the years in question in connection with the franchises acquired by them. The next issue is whether petitioners, in the operation of the dance studios during the years before us, were entitled to deduct estimated future expenses under prepaid dance instruction contracts for untaught lessons at the end of the taxable year. It is stipulated that, except for the disputed reserves, the Lawlesses, the Arthur Murray School of Dancing of Arizona, Inc. and the partnership were all on a cash basis method of accounting. As indicated in our findings of fact, the petitioners included in gross income all cash received during the year, claimed deductions for actual expenditures paid, and also claimed a deduction for estimated future teaching costs. Such future costs were based upon a designated hourly rate which was determined by Arthur Murray, Inc. In Simplified Tax Records, Inc., 41 T.C. 75, this Court, relying upon the recent Supreme Court decisions in Schlude v. Commissioner, 372 U.S. 128, *294 American Automobile Assn. v. United States, 367 U.S. 687, and Commissioner v. Milwaukee & Suburban Transport Corp., 367 U.S. 906, held that the taxpayer was not entitled to deductions in connection with a reserve for the estimated future costs of providing certain services to its customers. Although the Schlude and American Automobile cases involved the deferral of income rather than the deduction of estimated future expenses, we stated in Simplified Tax Records, Inc., supra, p. 79, that "[while] it can be argued that there are technical distinctions in deferring prepaid income and deducting estimated future expenses in cases like this the net result is the same and we think the same principles of tax accounting and the Commissioner's authority should be applied to both techniques." We find nothing in the present case to distinguish it from Simplified Tax Records, Inc., supra. We sustain respondent on this issue. The next issue involves the transferee liability of the Lawlesses for the income tax deficiencies, plus interest, of the Arthur Murray School of Dancing of Arizona, Inc. which was dissolved on June 30, 1955 and its assets distributed to the Lawlesses. It has been stipulated *295 that the properties received by the Lawlesses in the corporate liquidation had a fair market value of $139,980.14. The total deficiencies determined by respondent against the corporation for the taxable years ended June 30, 1952, 1954 and 1955 amounted to $25,772.32. At the trial petitioners' attorney admitted that the only question before the Court in the transferee issue was whether the transferor corporation had in fact any tax liability. In addition, the following stipulation was made by the parties: The properties received by the Lawlesses were received without consideration, other than the cancellation of stock, being given therefor; the properties received by petitioners were of a net fair market value in excess of $25,772.32 on the date of transfer; and by reason of the receipt of the properties the Lawlesses are transferees of the corporation and are liable for the payment of any deficiencies in income taxes, and interest thereon as provided by law, determined by this Court to be due by the corporation. Since we have already held that the corporate transferor was not entitled to deduct estimated future teaching costs in the taxable years ended June 30, 1952, 1954 and 1955, *296 sustaining respondent's determination, it would appear that we must also sustain respondent's determinations of transferee liability against the Lawlesses. However, petitioners make some argument on brief that they assumed a corporate liability of $80,930 (representing the provision made by the corporation for prepaid instruction still untaught) and that this amount, together with the assumed corporate liabilities, should be deducted from the stipulated fair market value of distributed assets in determining the net value of the transferred assets for purposes of limiting their transferee liability. [3]
Respondent has the burden of proving liability of the taxpayer as a transferee, section 6902 of the Internal Revenue Code of 1954 and section 1119 of the Internal Revenue Code of 1939, and one of the elements which respondent must establish is the value of the assets transferred. Here, such value is stipulated, and the remaining elements necessary to establish transferee liability have been *297 established. At this point the burden of going forward is shifted to petitioners to show the existence and extent of additional liabilities assumed by them. See Fada Gobins, 18 T.C. 1159, affd. 217 F. 2d 952; Estate of Henry Miller, 42 T.C. 593; Leon G. Grieb, 36 T.C. 156; and Estate of L. E. McKnight, 8 T.C. 871. We do not believe petitioners have met their burden as to the purported liability. In the first place it represents nothing more than an estimate of certain costs to be incurred at some future date. This estimate is based upon hourly rates supplied by Arthur Murray, Inc., not by petitioners, and it is not at all certain just what such future costs would actually be. Nor does it appear that the petitioners would normally be obliged to refund this amount, since the typical student contract for prepaid courses expressly provided that no refunds would be made and that it was noncancellable. Consequently, petitioners cannot point to any fixed liability that they incurred when the corporate assets were transferred to them. Thus, assuming that this provision for future teaching costs can be regarded as a liability assumed by petitioners, there is nothing in the record to show *298 what the amount of such liability would be. In view of the foregoing, it will not be necessary to discuss other infirmities in petitioners' argument on this point. We sustain respondent's determination that the Lawlesses are liable as transferees for the income tax deficiencies, plus interest, of the transferor corporation for its fiscal years ending June 30, 1952, 1954 and 1955. The next issue is whether the Lawlesses are entitled to a deduction of $13,330.58 in 1961 in connection with their operation of the Fort Worth studio (or studios). [4] The Lawlesses have the burden of proof to show they are entitled to this deduction. Unfortunately, the evidence on this question is quite obscure and far from satisfactory. The franchises and studios in Fort Worth and Fort Worth-Ridglea were sold in 1957 to Gordon Johnson for $250,000, payable in cash and in weekly installments based upon a percentage of the weekly gross receipts from the studios. At this point in the record, certainty ceases. It appears that the studios passed through several hands and eventually came to one Byron *299 Rider who operated the studios until about October 1961, at which time he simply abandoned the studios. The Lawlesses did not have any contractual relationship with Rider as buyer and seller, and as to Johnson, we are merely informed that he had long passed out of the picture. About a week after Rider ceased operations, the Lawlesses reopened the Fort Worth studio and operated it for about 14 months. Expenses incurred in the operation of the studio gave rise to the disputed deduction in 1961. Most of the argument made by the Lawlesses on brief is that these amounts are deductible under section 212 of the Internal Revenue Code of 1954 as expenditures incurred for the production of income or for the management, conservation or maintenance of property held for the production of income. They do not seriously contend that their short-lived operation of the Fort Worth studio constituted a part of their trade or business, which would bring the expenditures within section 162 of the Internal Revenue Code of 1954, and in any event the record would not support such a contention. There is no merit in the Lawlesses' main argument under section 212 of the Internal Revenue Code of 1954 that they *300 operated the studio so that the weekly payments due from Gordon Johnson (who originally purchased the studios in 1957), which payments were based on gross receipts from the studio, would continue. Even if we were aware of the existing liabilities of the various operations of the studios in October 1961 when the studios were abandoned by Rider, the most that can be said is that the Lawlesses failed to realize expected capital gain from the sale of the studios in 1957. Nor are we persuaded that the Lawlesses reopened the studios for a short time in order to protect the franchises. As for the existing students of the studios, Lawless was asked what would have been the situation with regard to such students if the studios were not reopened, and he replied "I have no idea." We cannot, on the basis of this record, find that the expenditures incurred by the Lawlesses in connection with the Fort Worth studio are deductible under section 212 of the Internal Revenue Code of 1954. It may be that the Lawlesses incurred losses which may be deductible under some other section of the Code, and it is possible such losses may be deductible in some other year. It is also conceivable that these expenditures *301 were incurred by the Lawlesses on behalf of third parties and were therefore not deductible as their own expenditures, or perhaps they constituted a loan which has not been shown to be worthless. However, we need not conjecture further. We hold that the Lawlesses have not met their burden of showing that they are entitled to this deduction in 1961. The next issue is whether the Lawlesses are liable for additions to tax in 1957 and 1959 under section 6651(a) of the Internal Revenue Code of 1954, which section imposes an addition to tax for failure to file a timely return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The Lawlesses concede that the 1957 return, which was not filed until October 15, 1959, was not timely filed. They contend, however, that J. D. Newbould, an accountant, had prepared their returns for many previous years and that when he died in 1958, the Lawlesses did not realize that an extension of time obtained by the accountant for the 1957 return would soon expire and that it would be necessary to obtain a renewed extension. We are not impressed with this tenuous explanation. There is no satisfactory indication in *302 the record that an extension of time was ever granted for filing the 1957 return, let alone a renewal of such extension. Moreover, an examination of the returns filed for prior years shows that they were prepared by various individuals (other than Newbould) who were apparently associated with the Newbould accounting office. Consequently, we fail to see how Newbould's death in 1958 was somehow responsible for the failure to obtain extensions of time or for the late filing of the 1957 return. We find that the Lawlesses have not shown that their failure to timely file their 1957 income tax return was due to reasonable cause within the meaning of the statute. The Lawlesses filed their 1959 income tax return on July 15, 1960. The accountant who prepared the 1959 return testified that he had obtained an extension of time for filing the return to May 15, 1960 and that he subsequently obtained a further extension of time to July 15, 1960. There is in evidence a copy of a letter (obtained from the accountant's files) dated May 12, 1960 requesting an additional extension of time to July 15, 1960. We have also considered the testimony of the Internal Revenue Service employees as to inter-office *303 procedure in connection with the handling of requests for extensions of time and we are left with a strong impression that, in this particular instance, the regular routine was not followed. On the basis of this record, we are persuaded that the Lawlesses did in fact obtain an extension of time to July 15, 1960 and that their 1959 return, as indicated on its face, was timely filed within the meaning of section 6651(a) of the Internal Revenue Code of 1954. We sustain respondent's determinations that the Lawlesses are liable for additions to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the years 1951 and 1953 and under section 294(d)(2) of the Internal Revenue Code of 1939 for the years 1952 and 1954, as well as for the self-employment taxes for several of the years here involved. It is recognized by the Lawlesses on brief that the correctness of these additions to tax depends on the outcome of the other issues before this Court involving their correct income tax liabilities for the years in question. Decision will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: LEE LAWLESS as Transferee of ARTHUR MURRAY SCHOOL OF DANCING OF ARIZONA, INC., a corporation (dissolved), Docket No. 94364; MICHAEL V. LAWLESS as Transferee of ARTHUR MURRAY SCHOOL OF DANCING OF ARIZONA, INC., a corporation (dissolved), Docket No. 94365; ARTHUR MURRAY SCHOOL OF DANCING OF ARIZONA, INC., a corporation (dissolved), Docket No. 94366.↩
*. By official order of the Tax Court, dated 2/2/66 and signed by Judge Mulroney, this amount was substituted for the figure $122,431.78.↩
2. In Westinghouse Broadcasting Co., 36 T.C. 912, aff'd. 309 F. 2d 279↩, where the question was whether the taxpayer had shown that a network application contract had a determinable useful life, the contract was for a term of two years with automatic renewals unless either party gave written notice of an intention not to renew.
3. It has been stipulated that the Lawlesses assumed the following liabilities of the transferor corporation: accounts payable, $239.20, notes payable, $7,720.19, and payroll taxes payable, $4,401.82.↩
4. The record is unclear as to whether the Lawlesses reopened one studio or more than one studio in the Fort Worth area.↩